BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, pro hac vice)
J. RAE LOVKO
(Cal. Bar No. 208855, pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTERIOR BOARD OF LAND APPEALS, UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and KG MINING INC.,<br><br>*Defendants*. | Case No. 3:25-cv-00039-ART-CSD<br><br>**DECLARATION OF LAURA LEIGH IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

I, Laura Leigh, declare and state as follows:

1. I am a U.S. citizen residing in the State of Nevada.

2. I am the President and founder of the Wild Horse Education (WHE), which has its principal place of business at 216 Lemmon Drive, #316, Reno, NV 89506. In addition, I am an active member and supporter of WHE.

3. I am submitting this declaration to provide facts relevant to Plaintiffs' Article III standing for the above-captioned case and provide clarification regarding WHE's and my experience with the Triple B Complex and its herd management areas (HMAs).

4. The IBLA issues final decisions for the Department of the Interior on appeals from decisions of the BLM. The rules governing the IBLA are designed to protect the interests of those who are adversely affected by such decisions.

5. The IBLA issues final decisions which then can be appealed to the District Court.

6. Many individuals and organizations, including WHE and myself, appear unrepresented before the IBLA. To facilitate regular citizens' right to the protection offered by the IBLA, the IBLA website used to say that filings could be handwritten. As I understand, this was removed from the website a few years ago perhaps because the IBLA was switching to an electronic filing system, and in 2025, a new rule was adopted to address document formatting requirements.

7. On August 12, 2024, WHE, I, and Tammi Adams (a volunteer and member with WHE) filed a Notice of Appeal and Petition for Stay with the IBLA to challenge the BLM decision that approved the Jupiter Project (DOI-BLM-NV-L060-2021-0013-EIS). *See* AR_001-AR_020.

8. The IBLA website (https://www.doi.gov/oha/organization/ibia/faqs/How-Do-I-Appeal-a-Decision-to-the-Board) provides that a notice of appeal need only "briefly set out the reasons" for challenging a BLM decision. It "does not need to be a full statement of your concerns."

9. WHE, I, and Tammi Adams filed oppositions to BLM's and KG Mining's Motions to Dismiss. *See* AR_154-AR_165, AR_194-AR_209.

10. On September 9, 2024, WHE, I, and Tammi Adams filed our Statement of Reasons with the IBLA. *See* AR_210-AR_249. Although the deadline for filing this statement was not yet due (*see* AR_251), we filed the statement early to assist the IBLA in ruling on BLM's and KG Mining's motions to dismiss.

11. The IBLA stated that it did not need the administrative record to rule on the motions to dismiss. *See* AR_251. So, when the IBLA dismissed our appeal because it did not think we had standing, there was no administrative record.

12. As the record for the above-captioned case recognizes, the Jupiter Project will expand KG Mining's plan of operations for the North Operations Area (NOA) of the Bald Mountain Mine. *See* AR_037, AR_253. The Project includes a boundary extension for the NOA that totals 3,425 acres. *See* AR_037. Life-of-mine surface disturbance in the NOA would increase from 10,782 acres to 14,752 acres, resulting in a net surface disturbance increase of about 3,969 acres. *See id.* Mine life would extend an additional 11 years. *See id.*

13. The Triple B Complex consists of the Triple B Herd Management Area (HMA), the Maverick-Medicine HMA, and the Cherry Springs Wild Horse Territory (WHT). A portion of the Antelope Valley HMA is managed as part of the Triple B Complex because highway 93 cuts it off entirely from the rest of the Antelope Valley HMA.

14. When evaluating the Jupiter Project, BLM's cumulative impact analysis claimed to look at the Project's impact when combined with other past, present, and reasonably foreseeable future actions and trends. BLM identified the maximum cumulative effect study areas (CESA) as containing 19,377,103 acres. The Draft EIS depicted this as:

//
//
//
//



15. This maximum CESA includes the entirety of the Triple B Complex, including all of the Triple B HMA, the Maverick-Medicine HMA, Antelope Valley West of U.S. Highway 93 HMA, and the Cherry Springs Wild Horse Territory. It also includes the Antelope Complex, Pancake Complex, and Moriah Herd Area.

16. When looking at cumulative impacts on wild horses, the CESA was limited to a review of impacts in the Triple B HMA – despite BLM saying in the Draft EIS that "Wild horses

move freely throughout the complex and the adjacent Cherry Springs Wild Horse Territory." But even so, BLM said the estimated cumulative surface disturbance in this HMA from past, present, and reasonably foreseeable future actions was more than 140,000 acres.

17. WHE is a national nonprofit corporation dedicated to research, journalism, and public education concerning the activities and operations of federal and state management of the free roaming horse and wild burro populations.

18. The mission of WHE is to protect and preserve wild horses and burros on range, during and after capture. WHE works to do so in multiple ways. First, WHE provides information and education to the public about the current situation with American wild horses and burros and the issues surrounding public land management and wild horses. In this, WHE aims to remove the curtain that veils governmental activities against wild horses from the public eye in order to advance wild horse advocacy and support. Second, WHE also aims to facilitate public awareness and participation in wild horse issues, such as in comments on proposed agency actions. Third, WHE also advocates for the creation of a sane, scientifically-based management strategy for these animals in the wild. Fourth, WHE promotes public adoptions of formerly wild horses and supports those who adopt them for rescue and sanctuary. WHE has, since its founding, advocated for enforceable welfare rules for management from range, through capture and into holding.

19. WHE educates and informs about wild horses and burros through articles, photographs, videos, and sharing data and other information. WHE's members and supporters (the majority of whom reside throughout the United States) regularly attend and observe wild horse and burro roundups, removals, and holding pens.

20. WHE frequently submits comments during the NEPA process on BLM proposed plans, including but not limited to Environmental Assessments (EAs). WHE has participated at hearings made available for public comment on BLM proposed plans, too. WHE has an interest in ensuring that wild free-roaming horses are treated as an integral part of public lands, management activities are conducted at the minimal level feasible, and management activities

include development and consideration of land use plans and herd management area plans.

21. WHE's mission encompasses an interest in ensuring that the wild free-roaming horses in the Triple B Complex (including within each of the Complex's HMAs and WHT) are protected and preserved in keeping with the mandates contained in NEPA, the Wild and Free-Roaming Horses and Burros Act (Wild Horse Act), associated regulations, and agency guidance.

22. WHE and its members enjoy visiting wild horses in multiple HMAs, including those in the Triple B Complex, and appreciate the natural beauty and behaviors of the herds in a natural environment.

23. When BLM engages in documenting and assessing gather operations in the Triple B Complex, the agency frequently announces the gather for the Complex as a whole rather than specific to any HMA within the Complex. BLM treats the appropriate management level (AML) for each HMA collectively in planning for gathers and accounting of a total when this is done.

24. Gather operations usually are based on EAs that are adopted prior to removing horses. Over the past decade, most of the EAs authorize gather operations for a ten-year period of time.

25. In 2017, BLM adopted the Antelope and Triple B Complexes Gather Plan (DOI-BLM-NV-E030-2017-0010-EA), which authorizes the gathering and removal of excess wild horses from the Antelope and Triple B Complexes (along with fertility control management) over a period of ten years from the initial gather.

26. Since 2011, I have been visiting the Triple B Complex to document and enjoy wild horses. *See* AR_022. I have known and photographed many of these Triple B horses since birth. *See* AR_165.

27. For the past decade, I have visited the Triple B horses once per month. *See* AR_165. During these visits, I have documented the movement of horses between the Complex's individual HMAs. *See id.* Based on this, I am aware "[t]he movement between the HMAs is significant." *Id*. I plan to continue visiting these horses into the coming future. *See* AR_022-AR_023.

28.  I thought by stating I have documented the movement between the HMAs, it is obvious that my visits include visits in the Triple B HMA (as well as the Complex's other HMAs and WHT). However, had the Board asked for clarification, I could have provided further details. These include:

    a. Over the past decade, I have visited the Triple B HMA on average eight times per year. During these visits I document and enjoy the Triple B horses.

    b. In addition, since 2011, WHE has sent volunteers to observe every gather operation that has been conducted in the Triple B Complex. (This does not include gathers that use bait traps because BLM does not allow the public to observe gathers that use bait traps.) I have been present at the majority of these gathers for a large portion of observation days.

    c. Most recently, I observed a roundup in the Triple B HMA in 2022. I was not personally at the roundup that occurred in 2024, but another WHE volunteer attended.

    d. On approximately September 1, 2024, I went into the Triple B HMA and took photographs of some of the horses, including "Little Dove," a horse that I have known since her birth. During this visit, I saw many horses roaming through the acres that are included in the expansion area of the Jupiter Project.

    e. In late April or early June of 2025, I again visited the Triple B HMA and drove through the expansion area of the Jupiter Project. As a result of the Project, there was a lot of traffic and disturbed, muddy earth. I did not see Little Dove or many of the horses that had been there in 2024. Instead, I only saw 2 dun stallions.

29.  When BLM was doing a NEPA review of the Jupiter Project, WHE, I, and Tammi Adams submitted comments. These comments were attached to our Statement of Reasons. See AR_231-AR_249.

30.  Regarding the impact of the Jupiter Project, our comments noted:

• The Project's direct environmental destruction and negative cumulative impacts

outweighed any benefit from the continued operations and expansion of the Bald Mountain Gold Mine.

- Not only will thousands of acres be removed from the Triple B HMA by the Project (in addition to the more than 140,000 already removed from the HMA cumulatively), but the Project also will remove the Triple B horses' access to forage and water and increase vehicle collisions that are already an issue with the existing mine. BLM's environmental review refused to acknowledge and address mitigation for the significant acreage and resources that will be lost to wild horses and burros.

- These impacts will affect the entire ecosystem directly, permanently and extend beyond the project boundaries.

- BLM did not provide methods, data, nor analysis of the cumulative impacts to the Triple B wild horses.

- Because BLM has no Herd Management Area Plan (HMAP) for the Triple B horses, BLM's analysis also was not based on any management objectives specific to these horses.

- At minimum, in light of the lack of HMAPs, the draft EIS should have included all census data, seasonal use data, foaling season information, genetic data, and all data pertaining to wild horse use in, around, and through the project area and throughout the neighboring HMAs so that impact and appropriate mitigation measures could be analyzed and thoroughly addressed.

31. While our comments focused on impacts to wild horses, we also addressed how BLM's violation of NEPA impacted other animal species and humans.

32. In the record before the IBLA, I tried to explain that the Jupiter Project's direct impacts will result in the Triple B horses losing approximately 4,000 acres of habitat, which is some of the best forage in the entire Triple B HMA. *See* AR_156, AR_215. In and of itself, this loss of habitat and resources is significant. *See id*. Yet, the impact is even more disastrous when

past actions are included, which have already resulted in the Triple B horses losing 140,000+ acres of habitat. *See* AR_004, AR_216.

33. This loss not only means the horses lose acreage (and access to the land's forage and water), but it also impacts BLM's analysis of when excess wild horses must be gathered and permanently removed from the Triple B Complex. *See* AR_011, AR_159, AR_227-AR_228.

34. The Wild Horse Act requires BLM to manage and protect the Triple B horses. *See* AR_222. BLM may conduct gather operations to remove "excess" horses. *See* AR_011. The determination of whether excess horses exist is based on the appropriate management levels (AML) set by BLM and deterioration of rangeland health. *See* AR_214, AR_226, AR_227.

35. In BLM's Wild Horses and Burros Management Handbook, BLM defines AML as "[t]he number of adult horses or burros (expressed as a range with an upper and lower limit) to be managed within an HMA. Forage for [wild horses and burros] (AUMs) is allocated based on the AML upper limit." For the Triple B HMA, BLM set the AML as 250-518 wild horses. *See* AR_214. For the Triple B Complex as a whole, BLM set the AML as 482-821 wild horses. *See id.*

36. The loss of habitat and resources from the Jupiter Project extension area means the horses will be pushed into other areas of the Triple B Complex, including areas where water sources are nonexistent or have been in disrepair for decades. *See* AR_004, AR_011, AR_159, AR_195, AR_200-AR_201, AR_215, AR_217, AR_219-AR_220, AR_225-AR_227. This will lead to BLM more quickly determining that rangeland health is deteriorating (the same number of horses cannot thrive in the Complex when acres and resources are taken away), leading to the agency conducting gather operations to permanently remove horses that otherwise might have been able to live there. As I noted in our Notice of Appeal and Statement of Reasons:

> Resulting irreparable and imminent harms to the Triple B Complex wild horses and Appellants shall occur from the Bald Mountain Mine Juniper Project mine expansion, … coupled with the proposed unsustainable and permanent groundwater use/removal, resulting in wild horses' lack of habitat, forage, and water resources, and Nevada BLM then claiming an "excess" of Triple B wild horses impacting thriving natural ecological balance and the significant/ impending permanent removal and placement of Triple B wild horses into private

DECLARATION OF LAURA LEIGH
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Page 9 of 11

> off-limits holding facilities. Appellants have witnessed this failure in the
> Agency's carrying out of NEPA planning and procedures time and time again.

AR_011.

> BLM utilizes "loss of habitat" and "insufficient resources" as justification for
> removals and the "zeroing out" of wild horse herds. … Historical removal actions
> by Nevada BLM are clearly documented repeatedly. Other "multiple uses"
> deplete resources and remove critical habitat from HMAs, and then BLM declares
> an "excess" of wild horse and "declining range resources" = removal.

AR_227.

37. BLM already has approved a ten-year gather plan for the Triple B Complex. *See* AR_227. Thus, "the threat of instantaneous and unsupported removal" is not hypothetical, and BLM can use the loss of habit caused by the Jupiter Project to justify the immediate removal of wild horses from the Complex. *See* AR_227-AR_228.

38. By not doing a proper cumulative impact analysis that took a hard look at other mines, oil fields, and geothermal energy production sites, impacts to the Triple B horses were ignored. AR_004-AR_006, AR_017, AR_214-AR_222. For example, BLM should have accessed cumulative impacts to foaling seasons and horse migration routes, as well as health implications to horses caused by noise, the use of various chemicals, increased human presence, and increased motor vehicle use. AR_005-AR_006, AR_017.

39. The IBLA relied upon a 2018 order issued in Elyse R. Gardner Walsh, Laura Leigh & Wild Horse Education to dismiss our appeal. I objected to this order being relied upon because of the unusual circumstances involved in that appeal. *See* AR_197. Specifically, in that appeal, I and Wild Horse Education submitted a Notice of Appeal and Petition for Stay, which was accompanied by an initial declaration. After BLM opposed the petition, the IBLA issued an order to show cause because we did not file a timely response to this opposition. We did not meet the deadline to file any response or supplemental declarations because the Wild Horse Education's vice-president and my close friend died unexpectedly and suddenly from a heart attack. *See* AR_197. I simply was too distraught to adequately address the appeal and issues of

standing.

40. The IBLA order that dismissed our appeal has not made our appeal moot. BLM violated NEPA, and as a result the direct and cumulative impacts to the Triple B wild horses (and other animal species and humans) were never analyzed as required, and these impacts are not being mitigated by BLM.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 27th day of August, 2025,

By: /s/ Laura Leigh
Laura Leigh