**EXHIBIT F7**

**Coalition of Concerned Natl. Park Retirees,
165 IBLA 79 (2005)**

THE COALITION OF CONCERNED NATIONAL PARK RETIREES, <u>ET</u> <u>AL.</u>

IBLA 2004-286                                    Decided March 14, 2005

Appeal from the dismissal of a protest of an offering at a competitive oil and gas lease sale.  COC-67400 through COC-67426.

Statement of reasons for appeal requested.

1.      Administrative Procedure: Standing--Appeals: Standing--Oil and Gas Leases: Competitive Leases--Rules of Practice: Appeals: Standing to Appeal

In order to have a right to appeal a BLM decision, a person or organization must be a "party to a case" and must be "adversely affected" by the decision. 43 CFR 4.410(a).  A party may show adverse effect through evidence of use of the lands in question.  A party may also show it is adversely affected by setting forth a legally cognizable interest, in resources or in other land, affected by a decision and showing how the decision has caused or is substantially likely to cause injury to those interests.  43 CFR 4.410(d).

APPEARANCES:  Keith G. Bauerle, Esq., Earthjustice, Denver, Colorado, for appellants; Jennifer E. Rigg, Esq., Office of the Regional Solicitor, U.S. Department of the Interior, Lakewood, Colorado, for the Bureau of Land Management.

OPINION BY ADMINISTRATIVE JUDGE IRWIN

The Coalition of Concerned National Park Service Retirees (the Coalition), The Wilderness Society (TWS), the Natural Resources Defense Council (NRDC), and the Colorado Environmental Coalition (CEC) (appellants) appealed the June 18, 2004, decision of the Deputy State Director, Division of Energy, Lands and Minerals,

165 IBLA 79

Colorado State Office, Bureau of Land Management (BLM), dismissing a protest of an offering by BLM of 27 parcels of land near Dinosaur National Monument in Moffat County and Rio Blanco County, Colorado, at a February 12, 2004, Federal competitive oil and gas lease sale. Appellants also petitioned for a stay of BLM's decision.

Appellants' petition recited that to request a stay they must be a party to the case and be adversely affected by the decision being appealed. 43 CFR 4.410(a). They met the first requirement, they stated, because they had actively participated in the decision-making process by filing their protest. See Center for Native Ecosystems, 163 IBLA 86, 88 (2004).

For a party to show it is adversely affected, appellants stated they were aware that the party

> must demonstrate a legally recognized "interest" that is or may be adversely affected by the underlying decision. Glenn Grenke v. BLM, 122 IBLA 123, 128 (1992). This requisite "interest" can include cultural, recreational, and aesthetic uses and enjoyment of public lands. Southern Utah Wilderness Alliance, 127 IBLA 325, 326 (1993); Animal Protection Institute of America, 117 IBLA 208, 210 (1990). IBLA does not require a showing that an injury has actually occurred; rather, a colorable allegation of injury suffices. Powder River Basin Resource Council, 124 IBLA 83, 89 (1992).

(Petition at 4.)

Appellants related the general interests of their organizations and stated the uses some of their members had made of the lands. For example, "TWS members use the disputed lease lands for hunting, fishing, hiking, backpacking, photography, wildlife viewing, and other recreational, aesthetic, and educational purposes," id. at 5; "NRDC members use and enjoy public lands in and throughout Colorado – including the lands in the White River Field Office area – for a variety of purposes, including recreation, solitude, scientific study, and aesthetic appreciation," id.; "CEC members use the disputed lands for recreation and are concerned with protecting wildlife, scenery, and other values." Id. at 6.

> Members of [all appellant] organizations have visited and enjoyed the Monument and disputed lease parcels, intend to return, and would be harmed by oil and gas development on these parcels – especially if environmentally unsound development is allowed to proceed absent

165 IBLA 80

adequate study and safeguards. Their interests in the area's scenic, recreational, aesthetic, ecological, and wilderness values will be adversely affected by the decision to lease the lands for oil and gas development. Accordingly, all Appellants will be adversely affected by the State Director's Dismissal of their collective protest * * *.

Id.

By order dated August 17, 2004, we took the petition for stay under advisement and directed appellants to submit more specific evidence of standing, stating:

> This Board has held that, in appeals involving a challenge to a competitive oil and gas lease sale, "each parcel in an oil and gas lease sale is not essential to the sale" and because "[e]ach individual parcel has its own characteristics and is offered separate from every other parcel," denial of a protest to multiple parcels in a sale does not establish that the protester has standing to appeal as to all the parcels. Wyoming Outdoor Council, 153 IBLA 379, 384 (2000). An organization may establish that it is adversely affected within the meaning of 43 CFR 4.410(a) by showing that one or more of its members uses the public land in question. At this juncture the Coalition has failed to show that any member of its organizations actually uses any of the 27 parcels at issue.

(Order of Aug. 17, 2004, at 1.)

In an order dated September 13, 2004 – having received a "Statement of Standing" supported by declarations from several individuals – we assumed appellants' standing for the purpose of addressing their petition for stay and denied it on the grounds that "the Board is not persuaded, based on the arguments presented in their petition, that appellants are likely to prevail on the merits of their appeal." See 43 CFR 4.21(b)(1)(ii), 4.21(b)(2). Subsequently, we have received a response to appellants' Statement of Standing from BLM. We have also granted appellants' motion to defer filing a statement of reasons for appeal until after we ruled on their standing.

[1] As appellants noted, in order to have a right to appeal a BLM decision, i.e., have "standing" before us as an administrative tribunal, a person or organization must be a "party to a case" and must be "adversely affected" by the decision. 43 CFR 4.410(a); Southern Utah Wilderness Alliance, 164 IBLA 1, 4 (2004); Mark S. Altman, 93 IBLA 265, 266 (1986).

165 IBLA 81

The Office of Hearings and Appeals codified these two requirements when it amended 43 CFR 4.410 in 2003:

> (b) A party to a case, as set forth in paragraph (a) of this section, is one who has taken action that is the subject of the decision on appeal, is the object of that decision, or has otherwise participated in the process leading to the decision under appeal, *e.g.*, by filing a mining claim or application for use of public lands, by commenting on an environmental document, or by filing a protest to a proposed action.

> \*        \*        \*        \*        \*

> (d) A party to a case is adversely affected, as set forth in paragraph (a) of this section, when that party has a legally cognizable interest, and the decision on appeal has caused or is substantially likely to cause injury to that interest.

43 CFR 4.410(b) and (d) (2003); 68 FR 33794, 33803 (June 5, 2003). In doing so, "[w]e emphasize[d] that the proposed rules were – and these final rules are – intended to codify existing IBLA precedents, not to either restrict or expand who has a right to appeal." 68 FR 33794 (June 5, 2003).

In the proposed rules, we gave three examples of our decisions dealing with the right of appeal. [1] "Some comments [on the proposed rules] expressed concern that the selection of [those] three IBLA cases * * * implied that other decisions in which appellants were found to have a right of appeal * * * were now discredited." Id. [2] "No such implication was intended," we responded:

> The three decisions were cited in the preamble to the proposed rules to illustrate circumstances that IBLA has encountered in determining whether a particular appellant did or did not have a right to appeal. Other IBLA decisions are also relevant in making such determinations, including those holding that an organization may have a right of appeal on behalf of its members and that not only an interest in the land but

---

[1] Those decisions were San Juan Coal Co., 155 IBLA 389, 393 (2001); Legal and Safety Employer Research, Inc., 154 IBLA 167, 171-72 (2001); and Powder River Basin Resources Council, 124 IBLA 83, 89 (1992). 67 FR 77011, 77012 (Dec. 16, 2002).

[2] The other decisions mentioned in the comments were National Wildlife Federation v. Bureau of Land Management, 129 IBLA 124 (1994), Donald K. Majors, 123 IBLA 142 (1992), and High Desert Multiple-Use Coalition, 116 IBLA 47 (1990).

165 IBLA 82

also an interest in resources affected by a decision may be legally
cognizable.

Id.

At the time we were proposing and adopting the amendment to 43 CFR 4.410,
Wyoming Outdoor Council, 153 IBLA 379 (2000), was, of course, one of the "other
IBLA decisions" that is relevant to our determining whether a particular appellant has
a right of appeal.  An important aspect of that decision is that the appellants argued,
based on our decision in John R. Jolley, 145 IBLA 34 (1998), "that they need only
show use of one of the 48 parcels of land leased in the February 2000 lease sale in
order to establish standing to challenge the * * * decision as it relates to all those
parcels." 153 IBLA at 383.  We observed that "the Jolley ruling on standing [was]
limited to the land exchange situation in which each parcel is a[n] integral part of the
proposed exchange," and that, as stated in our August 17, 2004, order, "each parcel
in an oil and gas lease sale is not essential to the sale" and "[e]ach individual parcel
has its own characteristics and is offered separate from each other parcel."  Id. at
384. 3/  We went on to say that, in addition to showing that one is a party to the case,

> one must also show that he or she is adversely affected by the decision
> being appealed.  As discussed above, this may be shown through
> evidence of use of the land in question.  In the oil and gas lease sale
> context, that means providing evidence of use of each particular parcel
> to which the appeal relates.  In this case, appellants have provided such
> evidence for only three parcels. [4/]

Id.  We concluded that appellants had standing only as to those three parcels.  We
have followed this Wyoming Outdoor Council decision in several decisions, e.g.,
Western Slope Environmental Resource Council, 163 IBLA 262, 270 (2004); Center
for Native Ecosystems, 163 IBLA 86, 90-91 (2004); Wyoming Outdoor Council,
156 IBLA 377, 379 (2002).

It is important to point out, however, that in Wyoming Outdoor Council we
said that adverse effect "may be shown through evidence of use of the land in
question." 153 IBLA at 384 (emphasis supplied).  That would be the most direct way

_____
3/  The Jolley decision would also be applicable in other situations where parcels are
related to each other, e.g., timber sales.

4/  The "as discussed above" reference is to the statement that appellant in Jolley had
"alleged life-long use of several of the public land parcels slated for exchange and the
Board held that a person challenging a multiple parcel land exchange did not have to
allege use of each parcel of public land in the exchange in order to satisfy the Board's
standing requirements." 153 IBLA at 383-84.

to show a connection between a legally cognizable interest and injury to that interest as the result of a decision. But "an interest in resources affected by a decision may be [a] legally cognizable [interest]." 68 FR 33794 (June 5, 2003). Therefore, one may also establish he or she is adversely affected by setting forth interests in resources or in other land or its resources affected by a decision and showing how the decision has caused or is substantially likely to cause injury to those interests. 43 CFR 4.410(d) (2003). See, e.g., William E. Love, 151 IBLA 309, 310, 320 (2000); Robert M. Sayre, 131 IBLA 337, 339 (1994); Kendall's Concerned Area Residents, 129 IBLA 130, 136-37 (1994); Missouri Coalition for the Environment, 124 IBLA 211, 216-17 (1992); State of California, 121 IBLA 73, 113 (1991); Dorothy A. Towne, 115 IBLA 31, 35 (1990); In re Pacific Coast Molybdenum, 68 IBLA 325, 331-33 (1982). In the oil and gas lease sale context, if one can show a connection between a legally cognizable interest that would likely be injured by leasing one or more parcels, then one has established he or she is or may be adversely affected as to those parcels.

Four of the 27 parcels named in appellants' protest of the February 12, 2004, lease sale lie astride of Highway 40, which runs east from the Utah-Colorado border to the south of Bull Canyon Wilderness Study Area, Willow Creek Wilderness Study Area, and Skull Creek Wilderness Study Area in western Colorado (WSAs). The Visitor Center and Monument Headquarters for Dinosaur National Monument are located at the junction of Highway 40 and Harpers Corner Drive, which extends north, passing between Bull Canyon WSA and Willow Creek WSA, approximately 14 miles to the southern boundary of the Monument. Three of the 27 parcels together surround the Visitor Center on three sides. Nine are contiguous with or adjacent to Harpers Corner Drive; eight are contiguous with or adjacent to Bull Canyon WSA or Willow Creek WSA. Four lie within two miles of the southern boundary of the Monument.

Appellants identified the resource interests they are concerned about – and the impacts on them of BLM's action – in their protest. They are daytime and night-time visual resources, noise, air quality and visibility, and wildlife in the Monument and in the WSAs. For example:

> [M]any of the spectacular vistas from the Monument's many scenic overlooks view unprotected BLM lands outside of the Monument. * * * As depicted by the attached viewshed analysis map, all of the protested lease parcels will be visible either from within the Monument or from roads providing access to it. See Map * * * (attached as Exh. 3). In particular, virtually all of the Colorado parcels will be visible from the Escalante and Canyon overlooks * * * . Similarly, development of the leases flanking Harper's Corner Drive would significantly impair the Monument visitor's experience. * * * Leases are likewise proposed that will surround the Monument's Visitor Center, presenting visitors with

views of pump jacks at what, for many, will be their first stop on the
way to the Monument.

(Protest at 7-8; emphasis in original.) [5/]

Appellants also noted that the Utah State Office, BLM, was planning to offer
parcels immediately to the west within the week.  "[D]evelopment of these
[Colorado] parcels, in combination with those parcels to be offered by the Utah State
Office of the BLM at its February 18, 2004 Competitive Oil and Gas Lease Sale, will
impact resources in the Monument and the WSAs."  Id. at 4-5.

In response to our August 17, 2004, order, appellants' Statement of Standing
included declarations of five individuals:  Reed F. Morris, an employee and member
of CEC and a member of NRDC and TWS; Pete Kolbenschlag, Western Slope Field
Director for and a member of CEC; Suzanne Jones, Regional Director for the Four
Corners States Region of TWS; Johanna Wald, senior attorney and Director of the
Land Program for NRDC, and a longtime member of that organization; and Dennis K.
Huffman, Superintendent of Dinosaur National Monument from 1987-1997 and a
member of the Coalition.

Appellants state that the Huffman, Wald, Kolbenschlag, and Jones declarations
establish that appellants have organizational standing, i.e., "that the interests the

_____

[5/]  The explanation for the Map in Exhibit 3 of the Protest states: "The viewshed
analysis was performed using selected viewpoints located on and adjacent to roads
and trails within the National Monument and access roads outside the National
Monument.  The elevation data used for the analysis were from the USGS [U.S.
Geological Survey] National Elevation Dataset (downloaded January 2004).  The
road and trail data were from the NPS [National Park Service] dataset, 1999
Road/Trail Coverage for Dinosaur National Monument, Colorado and Utah.
Viewpoints were selected at NPS overlooks and other designated attractions, road
and trail intersections and ends (including points where the roads and trails cross the
National Monument boundary), and key viewshed locations such as hilltops and
significant curves.  The analysis, based on a very limited number of viewpoints,
should be considered conservative as to the extent of visible areas within the lease
sale parcels."

Escalante Overlook is on Harpers Corner Drive, approximately 6 miles north of
the Visitor Center.  Canyon Overlook is on the southern boundary of the Monument,
just north of Harpers Corner Drive.

The map shows all but one parcel as visible from viewpoints on NPS Roads
and Trails and the remaining parcel, COC67424, as visible from Highway 40.

Appellant groups seek to protect are germane to their organizational purposes and that they have suffered redressible injuries from BLM's decisions," citing <u>Committee to Save the Rio Hondo v. Lucero</u>, 102 F.3d 445, 447 n. 3 (10th Cir. 1996). [6] (Statement of Standing at 2.)  Although the elements for standing under Article III are not required for a right of appeal under 43 CFR 4.410, <u>see</u>, <u>e.g.</u>, <u>Animal Protection Institute of America</u>, 118 IBLA 63, 65-66 (1991), we may look to Federal court decisions on standing for guidance.  <u>In re Pacific Coast Molybdenum</u>, 68 IBLA 325, 331-33 (1982).  Our decisions also require that, for an organization to have a right of appeal, one or more of its members must have an interest in own right that is or may be adversely affected by the decision.  <u>Wyoming Outdoor Council</u>, 153 IBLA at 383; <u>National Wildlife Federation</u>, 82 IBLA 303, 308 (1984).

Accordingly, appellants state that the Huffman, Morris, Kolbenschlag, and Jones declarations "establish that individuals of appellant organizations have standing."  (Statement of Standing at 4.)  Morris states:

> On several occasions I have enjoyed hiking in and around the two wilderness study areas (Bull Canyon and Willow Creek/Skull Creek) and the area of critical environmental concern (Moosehead Mountain) north of highway 40 and the Monument's visitors' center. * * *  During these hikes I have visited parcels including, but not limited to, COC67409 and 410. * * *  I have visited Dinosaur National Monument for recreation as well, including two trips in the past year.  On trips to Echo Park within the Monument for camping I have stopped at several

---

[6] "The same three elements [required for standing under Article III of the Constitution] apply when an association is the plaintiff. * * * An association has standing to sue even if it has not been injured itself so long as the association's members satisfy the constitutional minimum of Article III.  An association has standing to bring suit on behalf of its members when: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' <u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432 U.S. 333, 343 * * * (1997)." <u>Committee to Save the Rio Hondo v. Lucero</u>, 102 F.3d 445, 447-48 n. 3.

The three elements are 1) "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is 'concrete and particularized' and 'actual and imminent'"; 2) "a causal connection must exist between the injury and the conduct complained of; the injury must be fairly traceable to the challenged action"; and 3) "it must be likely that the injury will be redressed by a favorable decision." <u>Committee to Save the Rio Hondo v. Lucero</u>, 102 F.3d 445 at 447.

points along Harper's Corner Drive to enjoy the spectacular views; observe wildlife, including countless deer and small flocks of sage grouse; and to scramble around on the sandstone bluffs. On these trips I have set foot on parcels including, but not limited to, COC[67]414 to [67]417 and COC[67]419.

(Statement of Standing, Exhibit 2, at 2-3).

Morris' statements that he has used lands in parcels 67409, 67410, 674414-67417, and 67419 for hiking, enjoying the views, and observing wildlife connect the interests of CEC, NRDC, and TWS in daytime visual resources and wildlife resources to those parcels. His statement that he drove Harpers Corner Drive to Echo Park within the Monument and stopped at several points to enjoy the views and observe wildlife connects those organizations' interest in visual resources and wildlife to all 27 parcels (Map, Protest Exhibit 3). [2/] Therefore, CEC, NRDC, and TWS have demonstrated they have a right to appeal BLM's decision dismissing the protest as to all 27 parcels.

Huffman states:

During the 10 years I served as Superintendent of Dinosaur NM, I frequently visited public lands throughout northwest Colorado and northeastern Utah. The purposes of my visits were related to my professional duties to view and assess resource issues related to the Monument, as well as for active personal recreation. In addition, it was often necessary to pass through public lands nearby Dinosaur NM to access remote areas of the Monument for administrative purposes. For instance, Dinosaur NM was actively involved in a recovery effort for endangered Peregrine Falcons and I often hiked over these lands to observe falcons and the prey base upon which they depended. In addition, I participated in on-site interagency visits and discussions about issues on public lands in the northwest region of the state as a formal member of the Northwest Colorado Coordinated Resource Management (CRM) commitee. Last, while recreating in this region, I engaged in hiking, bird watching, endangered species viewing, wildlife photography and sought out cultural resource sites to view remains of past cultures. I have first hand knowledge of the impacts that will occur as large tracts are leased and developed in this regional

---

[2/] This assumes he approached Harper's Corner Drive on Highway 40 from the west, because parcel COC67424, which is on the Utah/Colorado border, is only visible from that viewpoint.

165 IBLA 87

environment.  In retirement I have continued to keep abreast of public
lands issues and to recreate in this region and will continue to do so.

(Statement of Standing, Exhibit 1, at 2.)  We understand Huffman's statement that in
retirement he has "continued to * * * recreate in this region" to mean that his
recreational activities during his retirement are substantially similar in kind and
location to those he engaged in while employed at the Monument.   Huffman's
Declaration is sufficient to establish a connection between the Coalition's interests in
visual resources and in wildlife and all 27 parcels.  Therefore, the Coalition also has a
right to appeal BLM's decision dismissing the protest.

　　　When a decision being appealed relates to land selections under the Alaska
Native Claims Settlement Act, our rules require that an appellant file a statement of
facts upon which it relies for standing.  43 CFR 4.412(b). [8/]  Although that rule does
not apply in other contexts, many appellants routinely include a statement of the
basis for their standing in their notice of appeal or statement of reasons.  We
encourage that practice because it benefits both the appellants and the efficient
functioning of the administrative review process.  It benefits appellants because we
have frequently said it is not our responsibility to speculate how an appellant is
adversely affected, and we will dismiss an appeal rather than engage in such
speculation.  Mark S. Altman, 93 IBLA 265, 266 (1986).  It benefits the efficient
functioning of administrative review because we do not have to take the time to issue
orders requiring a statement of standing or to consider petitions to reconsider orders
dismissing appeals because we could not determine a basis for a right of appeal.  As
this appeal demonstrates, it is helpful for an appellant to provide as much specific
evidence as possible about what interests are allegedly injured and what the
connections are between those interests and the decision it seeks to appeal.

　　　In our September 24, 2004, order we stated that appellants would have 14
days from receipt of an order ruling favorably on their standing to file their statement
of reasons and BLM would have 30 days from receipt of that statement to file an
answer.

_____

[8/]  We did not amend this rule when we amended 43 CFR 4.410 in June 2003.
Therefore, the reference in 43 CFR 4.412(b) should be to 43 CFR 4.410(e) rather
than 4.410(b).

165 IBLA 88

IBLA 2004-286

Therefore, pursuant to the authority delegated to the Interior Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, the appellants shall file a statement of reasons for their appeal within 14 days of receipt of this decision.

_____
Will A. Irwin
Administrative Judge

I concur:

_____
H. Barry Holt
Chief Administrative Judge

165 IBLA 89