TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar No. 8264
NICOLE R. LEIBOW
Assistant United States Attorney
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Nicole.Leibow@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Laura Leigh, and Wild Horse Education,<br><br>                Plaintiffs,<br><br>       v.<br><br>Interior Board of Land Appeals, United States Department of Interior, Bureau of Land Management, and KG Mining, Inc.,<br><br>                Defendants. | Case No. 3:25-cv-00039-ART-CSD<br><br>**Federal Defendants' Cross-Motion for Summary Judgment** |

Pursuant to Federal Rule of Civil Procedure 56(a), the United States Bureau of Land Management ("BLM") and Interior Board of Land Appeals ("IBLA") (collectively, "Federal Defendants") oppose Plaintiffs' Motion for Summary Judgment (ECF No. 43, "motion") and cross-move for summary judgment.

The motion is supported by the accompanying points and authorities.

Respectfully submitted this 9th day of February 2026.

                                                   TODD BLANCHE
                                                   Deputy Attorney General of the United States
                                                   SIGAL CHATTAH
                                                   First Assistant United States Attorney

                                                   */s/Nicole Leibow*
                                                 NICOLE R. LEIBOW
                                                 Assistant United States Attorney

# MEMORANDUM AND POINTS OF AUTHORITIES

## I. INTRODUCTION

Plaintiff, Laura Leigh, an individual, and Wild Horse Education ("WHE"), a non-profit corporation (collectively, "Plaintiffs"), challenge an Interior Board of Land Appeals ("IBLA") Order, issued on September 23, 2024, that dismissed an appeal of the BLM's decision approving an amendment to the plan of operations for the Bald Mountain Mine in White Pine County, Nevada. This amendment is known as the Juniper Project.

This case presents a narrow question: whether the IBLA acted arbitrarily or capriciously when it dismissed Plaintiffs' administrative appeal for lack of standing under its own standing regulation, 43 C.F.R. § 4.410. Applying its long-standing precedent, the IBLA concluded that Plaintiffs had failed to demonstrate a legally cognizable interest substantially likely to be injured by the BLM's approval of the Juniper Project, an amendment to a gold mine's area or operations. Because Plaintiffs did not satisfy the IBLA's standing requirements, the IBLA properly determined that it lacked jurisdiction over the appeal.

Plaintiffs do not challenge the merits of the BLM's underlying decision approving the Juniper Project or the environmental analysis supporting it. Instead, they ask this Court to substitute its judgment for the IBLA's reasonable interpretation and application of its own regulation, and find that the IBLA's interpretation was erroneous so that it can be remanded to the IBLA. The Administrative Procedure Act ("APA") does not permit that result. Accordingly, Defendants are entitled to summary judgment.

## II. STATEMENT OF UNDISPUTED FACTS

The Bald Mountain Mine ("Mine") is a large-scale, open-pit gold mine located in White Pine County, Nevada, approximately sixty miles southeast of Elko. AR_252–253. The Mine is located primarily on land managed by the BLM and has been in continuous operation for more than forty years. *Id.* The Mine operates pursuant to plans of operations approved by the BLM under its mining regulations, 43 C.F.R. Subpart 3809.

In 2020, KG Mining Inc. ("KG Mining") proposed an amendment, known as the Juniper Project, to its plan of operations for the Mine's North Operations Area. AR_253.

2

Before approving the amendment, the BLM prepared an Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA") and its implementing regulations. *Id.* The EIS evaluated the potential environmental impacts of the proposed expansion, including effects on wild horse and burro populations in the project area. AR_142 n.1. Following public comment and revision, the BLM issued a final EIS. On July 8, 2024, the BLM issued a Record of Decision approving the Juniper Project. AR_026–069.

On August 12, 2024, Plaintiffs appealed the decision to the IBLA and petitioned for a stay. AR_001–020. The BLM and KG Mining, as a proposed intervenor, both moved to dismiss the appeal for lack of standing. AR_141; AR_166. Plaintiffs filed a response to the BLM's motion to dismiss on August 29, 2025. AR_154. Plaintiffs subsequently filed a response to KG Mining's motion to dismiss on September 6, 2025. AR_194.

On September 23, 2025, the IBLA dismissed the appeal, concluding that Plaintiffs failed to demonstrate a legally cognizable interest substantially likely to be injured by the Juniper Project, as required by 43 C.F.R. § 4.410(d). AR_252–AR_257. Specifically, the IBLA found that Plaintiff Laura Leigh had provided evidence that she had visited the Juniper Project area itself and therefore failed to establish standing. AR_256–AR_257. Because the Plaintiff Laura Leigh lacked standing, the IBLA further concluded that WHE could not establish representational standing. *Id.*

On December 23, 2024, Plaintiffs filed this action seeking judicial review. ECF No. 1. The complaint challenges only the IBLA's standing determination and does not raise any substantive environmental claims concerning the BLM's approval of the Juniper Project.

### III. LEGAL STANDARDS

#### A. Summary Judgment in APA Cases

Summary judgment is an appropriate mechanism for resolving cases involving judicial review of final agency action under the APA. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). Because review is limited to the

3

administrative record and no material facts are in dispute, the case presents purely legal questions suitable for resolution on summary judgment. *Id.*

### B. APA Standard of Review

Under the APA, a court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). A court "must give substantial deference to an agency's own interpretation of its own regulations" and give the agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965) and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), respectively); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997). "In other words, [the court must] defer to the [agency's] interpretation unless 'an alternative reading is compelled by the regulation's plain language and by other indications of the [agency's] intent at the time of the regulation's promulgation.'" *Thomas Jefferson University*, 512 U.S. at 512 (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)). This standard is highly deferential and presumes the validity of agency action. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). IBLA decisions that interpret its own regulations are entitled to this level of deference. *See Pres. of Los Olivos v. U.S. Dep't of Interior*, 635 F. Supp. 2d 1076, 1089–90 (C.D. Cal. 2008) (holding that the *Auer* standard applies to the Interior Board of Indian Appeals ("IBIA") — another component board of the at the DOI Office of Hearings and Appeals); *see also Front Range Equine Rescue v. BLM*, No. 3:16-cv-149-AC, 2017 WL 1483335, at *4 (D. Or. Mar. 13, 2017) (IBLA relied on its own standing regulations to dismiss Plaintiffs' appeal).

Judicial review of agency action is limited to review of the administrative record. *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U. S. C. § 706, to the agency decision based on the record the agency presents to the reviewing court. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 (1971)." A court may not substitute its judgment for that of the agency and must uphold the decision if the agency considered the relevant factors and

articulated a rational connection between the facts found and the decision made. *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Courts reviewing IBLA decisions apply a limited and deferential standard of review under the APA. *See Melluzzo v. Watt*, 674 F.2d 819, 820 (9th Cir. 1982).

### C. Regulatory Framework Governing IBLA Standing

The United States Department of the Interior established the Office of Hearings and Appeals to decide matters involving appeals and review functions of the Secretary. 43 C.F.R. § 4.1. The IBLA, a component of that office, has final authority to decide appeals concerning the use and disposition of public lands and their resources, and decisions by the BLM. *Id.*

To appeal a BLM decision to the IBLA, an appellant must demonstrate standing under 43 C.F.R. § 4.410. An appellant must be a "party to a case" who is "adversely affected" by the decision. 43 C.F.R. § 4.410(a). A party is adversely affected when it has a legally cognizable interest that has been or is substantially likely to be injured by the decision on appeal. 43 C.F.R. § 4.410(d).

An IBLA decision dismissing an appeal for lack of standing constitutes final agency action. 43 C.F.R. § 4.403(a); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

Because the IBLA is interpreting and applying its own standing regulation, its interpretation is entitled to controlling weight unless plainly erroneous or inconsistent with the regulation. *Thomas Jefferson University*, 512 U.S. at 512. Courts have consistently deferred to the IBLA's interpretations of their own standing regulations. *See Preservation of Los Olivos*, 635 F. Supp. 2d at 1089–90.

## IV. LEGAL ARGUMENT

### A. The IBLA Reasonably Applied its Standing Regulation and Properly Dismissed Plaintiffs' Appeal for lack of Jurisdiction

The Department of the Interior's Office of Hearings and Appeals, Interior Board of Land Appeals promulgated its own regulation — 43 C.F.R. § 4.410 — through notice and comment rulemaking. This regulation describes what an appellant must show to have

5

standing to appeal a BLM decision to the IBLA. *See* 43 C.F.R. § 4.410. Because the IBLA is one component of the Office of Hearings and Appeals, it is required to follow the regulations promulgated by that Office. *See* 43 C.F.R. § 4.1. To have standing to appeal in the IBLA, the appellant must be "a party to a case" who is "adversely affected" by a BLM decision. 43 C.F.R. § 4.410(a). The regulation explicitly defines both terms. *See* 43 C.F.R. § 4.410(b), (d). The IBLA must apply *both* standing requirements set forth in 43 C.F.R. § 4.410 to determine whether it has jurisdiction to hear the appeal. *See WildEarth Guardians*, 183 IBLA 165, 170 (2013) ("If either [standing] element is lacking, the appeal *must* be dismissed" for lack of jurisdiction.) (emphasis added.)

Under 43 C.F.R. § 4.410, an organization may establish an actual or substantially likely injury to a legally cognizable interest in two ways. The first, and most direct, way is by offering evidence of actual use and enjoyment of the relevant natural resource by members of the organization and hindrance of such use and enjoyment by the challenged agency action. *Theodore Roosevelt Conservation Partnership*, 178 IBLA 201, 206-209 (Board found appellant lacked standing under 43 CFR 4.410 when the organization could not show any members had used or in the future would use any of the specific protested parcels of land.). An organization also may create standing by demonstrating a nexus between the challenged agency action and an injury to the interests which the organization seeks to protect. *Colorado Open Space Council, Sierra Club*, 109 IBLA 274, 279 (1989).

The IBLA expressly applied this regulation and concluded that, although Plaintiffs satisfied the "party to a case" requirement by participating in the underlying NEPA process for the Juniper Project, they failed to establish that they were "adversely affected" by the BLM's approval of the Juniper Project. Because that determination reflects a reasonable interpretation and application of the IBLA's own standing regulation, it must be upheld under the deferential standard of review mandated by the APA.

/ / /

/ / /

/ / /

B.   **The IBLA Correctly Concluded That Plaintiffs Failed to Show a Legally Cognizable Interest Substantially Likely to Be Injured**

In dismissing the appeal, the IBLA focused on what Plaintiffs demonstrated in the administrative record. *See* AR_252-259. The IBLA acknowledged that a legally cognizable interest can include aesthetic use and enjoyment of public lands and their resources. AR_257. But the IBLA concluded that Plaintiffs failed to establish such an interest in the specific public lands affected by the Juniper Project. AR_259. In their Notice of Appeal and Petition for Stay, Plaintiffs asserted broad concerns about wild horse management, cumulative impacts to the over two-million-acre large Triple B Complex, and the potential for future gathers and removals. AR_012-016. They described advocacy activities, organizational missions, and generalized visitation to wild horses within the larger Triple B Complex. AR_016. But Plaintiffs did not allege that either individual appellant, or any member of WHE — Laura Leigh or Tammi Adams[1] — had even visited the Juniper Project area itself. Nor did they claim any personal, site-specific aesthetic, recreational, or other use of the lands approved for expansion under the challenged decision. AR_257-258. Recognizing this deficiency, the IBLA gave Plaintiffs two opportunities to further explain how they had standing. AR_154-165, AR_194-209. In the end, however, the IBLA reasonably concluded that generalized regional interests and advocacy-based concerns, untethered to the specific lands affected by the decision on appeal, do not establish a legally cognizable interest substantially likely to be injured within the meaning of 43 C.F.R. § 4.410(d). AR 257_259. The IBLA found:

> To be sure, a legally cognizable interest can include aesthetic use and enjoyment of the affected public lands and their resources, such as wild horses. But other than Adams's claim that she has flown over the Mine "by commercial jet," which does not establish a legally cognizable interest in the affected public lands and their resources, there is no evidence that Leigh or Adams has ever visited or viewed wild horses at or near the Mine or the public lands that may be impacted by the Juniper Project. Rather, the evidence shows only that Leigh and Adams have visited the Triple B Complex to view the wild horses. That Complex, however, consists of the Triple B, Maverick-Medicine, and Antelope Valley HMAs and encompasses

---

[1] Although not a party in this case, Tammi Adams was an appellant in the IBLA and submitted a declaration to try and show that she and WHE had standing in the appeal.

2,059,987 acres, while the Juniper Project affects approximately 4,000 acres, a small fraction of that.

AR_257 (cleaned up).

### C. The IBLA's site-specific focus was a rational application of the regulation

The IBLA applied the regulation's plain requirement that an appellant demonstrate injury to its own legally cognizable interest. The IBLA explained that although Plaintiffs had visited portions of the Triple B Complex — a vast area encompassing more than two million acres — the Juniper Project affected only a small fraction of that land. AR_257. The IBLA has long held that standing cannot be established by visits to a project area generally, without an allegation that a member has visited a specific area where the alleged harmful actions would take place. *Western Watersheds Project*, 185 IBLA 293, 300 (2015) ("Nor can standing be established when an officer of an organization stated that he had visited the project area generally, but did not allege that he had visited any "specific areas" where the alleged harmful actions would take place."). Indeed, the IBLA pointed out that Plaintiffs provided no evidence to support standing. "But other than Tammi Adams's claim that she has flown over the Mine "by commercial jet," which does not establish a legally cognizable interest in the affected public lands and their resources, there is no evidence that Leigh or Adams has ever visited or viewed wild horses at or near the Mine or the public lands that may be impacted by the Juniper Project. AR_247.

Plaintiffs' failure to show any personal connection to the project area itself meant they failed to demonstrate that the challenged approval was substantially likely to injure their asserted interests. That reasoning reflects a rational connection between the regulatory standard and the facts before the agency. The APA does not permit a reviewing court to second-guess such line-drawing merely because Plaintiffs disagree with it. *See Melluzzo*, 674 F.2d at 820. "Although our inquiry must be thorough, the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,' and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Authority*, 747 F.3d at 601 (quoting *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416).

### D. Because the Individual Appellants Lacked Standing, WHE Could Not Establish Representational Standing

The IBLA correctly concluded that WHE lacked representational standing. AR_259. WHE's asserted standing was derivative of its members' standing, and the IBLA found that neither Leigh nor Adams established a legally cognizable interest substantially likely to be injured by the Juniper Project. *Id.*

Absent a member who satisfies the "adversely affected" requirement of 43 C.F.R. § 4.410(d), WHE could not independently invoke the IBLA's jurisdiction. *Id.* The Board's dismissal of WHE's appeal therefore followed directly from its reasonable standing analysis and was neither arbitrary nor capricious.

### E. Plaintiffs' Disagreement with the IBLA's Standing Analysis Does Not Render the Decision Arbitrary or Capricious

Plaintiffs' challenge ultimately asks the Court to reweigh the administrative record and substitute its judgment for that of the IBLA. The APA does not authorize such review. The IBLA identified the correct regulation, articulated the governing standard, examined Plaintiffs' submissions, and explained why those submissions failed to establish a legally cognizable, site-specific interest substantially likely to be injured by the challenged decision. That is the hallmark of reasoned decision-making. Because the IBLA reasonably interpreted and applied its own standing regulation, and because its decision is supported by the administrative record, the Court should uphold the dismissal and grant summary judgment in favor of Federal Defendants. *See Thomas Jefferson Univ.* 512 U.S. at 512.

### F. Plaintiffs Extra-Record Evidence Is Improper and Should be Disregarded

Judicial review under the APA is limited to the administrative record before the agency at the time of its decision. 5 U.S.C. § 706. The "whole record" consists of "everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993), citing *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555–56 (9th Cir. 1989); *see also* 5 U.S.C. § 706. The Ninth Circuit recognizes only narrow exceptions to this rule, none of which Plaintiffs invoke or establish. These exceptions are: (1) if it is necessary to determine whether the

agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter; or (4) when plaintiff makes a showing of agency bad faith. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006); *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).

Plaintiff Laura Leigh now attempts to bolster her position that she does indeed have standing to challenge the BLM's decision by appending to her motion for a summary judgment another declaration that was not before the IBLA. Plaintiff has not shown that any of the Ninth Circuit's exceptions apply to this extra-record evidence, nor can she. Moreover, Laura Leigh had numerous opportunities to show standing before the IBLA, including two declarations and a statement of reasons. *See* Declaration in Response to BLM Motion to Dismiss, AR_166; Declaration in response to KG Mining Motion to Dismiss, AR_209; and Declaration in Support of Statement of Reasons, AR_22-23.

This Court should therefore reject Plaintiff's declaration as improperly introduced extra-record evidence. *See Front Range Equine Rescue*, No. 3:16-cv-149-AC, 2017 WL 1483335, at *4 (granting Defendants' motion to strike Plaintiff's declaration introduced for the first time on summary judgment as "redundant and unnecessary").

## V. CONCLUSION

As outlined above, the IBLA properly applied the factors enunciated in 43 C.F.R. § 4.410 and the case law interpreting those factors to the facts before it in finding that Plaintiffs did not have standing to bring an appeal. Plaintiffs have failed to show the requisite causal and geographic nexus between their interest in wild horse and burros to the specific Mine area's impact on the wild horse and burro population.

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter judgment in favor of Defendants.

/ / /

Respectfully submitted this 9th day of February 2026.

        TODD BLANCHE
        Deputy Attorney General of the United States
        SIGAL CHATTAH
        First Assistant United States Attorney

        */s/ Nicole R. Leibow*
        NICOLE R. LEIBOW
        Assistant United States Attorney