1  BRENT M. RESH
   (Nevada Bar No. 14940)
2  BRENT RESH LAW, PLLC
3  2401 La Solana Way
   Las Vegas, NV 89102
4  (702) 781-6903
   brent@brentreshlaw.com
5
6  JESSICA L. BLOME
   (Cal. Bar No. 314898, pro hac vice)
7  J. RAE LOVKO
   (Cal. Bar No. 208855, pro hac vice)
8  GREENFIRE LAW, PC
   2748 Adeline Street, Suite A
9  Berkeley, CA 94703
   (510) 900-9502
10 jblome@greenfirelaw.com
11 rlovko@greenfirelaw.com

12 *Attorneys for Plaintiffs*

13              **UNITED STATES DISTRICT COURT**
                   **DISTRICT OF NEVADA**
14

15 LAURA LEIGH, individually, and WILD        Case No. 3:25-cv-00039-ART-CSD
   HORSE EDUCATION, a non-profit
16 corporation,                                **PLAINTIFFS' REPLY IN SUPPORT OF
                                               PLAINTIFFS' MOTION FOR
17    *Plaintiffs*,                            SUMMARY JUDGMENT AND
                                               OPPOSITION TO FEDERAL
18 v.                                          DEFENDANTS' AND KG MINING
                                               INC.'S CROSS-MOTIONS FOR
19 INTERIOR BOARD OF LAND APPEALS,             SUMMARY JUDGMENT**
20 UNITED STATES DEPARTMENT OF
   INTERIOR, BUREAU OF LAND
21 MANAGEMENT, and KG MINING INC.,

22    *Defendants*.

23

24

25

26 ──────────────────────────

27

28

1

2

3

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.        ARGUMENT ............................................................................................. 1

    A.    Laura Leigh's Declaration, dated August 27, 2025, is properly before this Court to
    demonstrate Article III standing. ............................................................................ 1

    B.    Laura Leigh's Declaration, dated August 27, 2025 is properly before this Court to
    review the IBLA's Order ...................................................................................... 2

    C.    The IBLA committed legal, factual, and procedural errors. ........................................ 6

III.        CONCLUSION ............................................................................................. 9

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Horse Prot. Asso. v. Frizzell*,
    403 F. Supp. 1206, 1214 (D. Nev. 1975) ............................................................... 7

*Camp v. Pitts*,
    411 U.S. 138, 142 (1973) ............................................................................................ 2

*Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*,
    450 F.3d 930, 943 (9th Cir. 2006) ............................................................... 2, 3, 4, 6

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332, 352 (2006) ............................................................................................ 1

*Fishing Co. v. United States*,
    195 F. Supp. 2d 1239, 1245 (W.D. Wash. 2002) ......................................... 2, 3, 4, 6

*League of Wilderness Defs. v. United States Forest Serv.*,
    549 F.3d 1211, 1218 (9th Cir. 2008) ...................................................................... 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 566-67 (1992) ............................................................................ 6, 7, 8

*Perez v. Cox*,
    No. 2:15-cv-01572-APG-DJA, 2022 U.S. Dist. LEXIS 122661, at *28 (D. Nev. July 11, 2022) ...................................................................................................................... 1

*Thompson v. United States Dep't of Labor*,
    885 F.2d 551, 555 (9th Cir. 1989) ............................................................... 2, 3, 4, 6

*Washington Env't Council v. Bellon*,
    732 F.3d 1131, 1139 (9th Cir. 2013) ...................................................................... 2

**Statutes**

U.S.C. § 706(2) .............................................................................................................. 1

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES

2

**Other Authorities**

3

*Becharof Corp.*,

4

    147 IBLA 117, 129 (1998) ................................................................................ 6

5

*Board of Commissioners of Pitkin County*,

6

    173 IBLA 173, 178 (2007) ................................................................................ 6

7

*Cascadia Wildlands*,

8

    188 IBLA 7 (2016) ............................................................................................ 8

9

*Coalition of Concerned National Park Retirees*,

10

    165 IBLA 79, 84 (2005) .................................................................................... 6

11

*In re Pacific Coast Molybdenum*,

    68 IBLA 325, 331-32 (1982) ............................................................................ 7

12

*W. Watersheds Project*,

13

    185 IBLA 293 (2015) ........................................................................................ 8

14

*Western Watersheds Project*,

15

    185 IBLA 293, 300 (2016) ................................................................................ 6

16

**Rules**

17

Fed. R. Civ. Proc. R. 56 ....................................................................................... 7, 8

18

**Regulations**

19

43 C.F.R. §§4.401-4.402 ......................................................................................... 6

20

43 C.F.R. § 4.402(a) ................................................................................................ 2

21

43 C.F.R. § 4.409(g) ............................................................................................... 6

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

1

## I.    INTRODUCTION

Plaintiffs have repeatedly and regularly visited the wild horses that reside in the Triple B Complex, which contains three herd management areas (HMAs), and they intend to continue these visits into the foreseeable future. Through their visits, Plaintiffs have visited each HMA for the purpose of recreation, to enjoy the public land's natural beauty and wildlife, to view wild horses, to attend gathers of wild horses, and to document the migration of the horses among the HMAs. Their protected interests in wild horses and the public lands are impacted by BLM's unlawful adoption of the Jupiter Project.

The IBLA dismissed Plaintiffs' appeal and petition, erroneously concluding that Laura Leigh and WHE lacked standing. This decision violated the Administrative Procedure Act (APA), 5 U.S.C. § 706(2) because the Board committed significant and prejudicial legal, factual, and procedural errors. Federal Defendants and KG Mining, Inc. counter that the IBLA acted reasonably in deciding Laura Leigh and WHE were not adversely affected by the Juniper Project, but their arguments necessarily fail as they do not address disputed facts and ignore relevant caselaw cited by Plaintiffs in their opening brief.

## II.    ARGUMENT

### A. Laura Leigh's Declaration, dated August 27, 2025, is properly before this Court to demonstrate Article III standing.

Laura Leigh submitted a declaration that accompanied Plaintiffs' opening brief. Dkt. 43-1. This declaration is provided to establish Article III standing for purposes of Plaintiffs' claims before this Court. *Id.*, ¶3. Defendants do not address the declaration's consideration for this reason.

A plaintiff must demonstrate standing for each claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "To establish standing at the summary judgment stage, the plaintiff 'must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'"  *Perez v. Cox*, No. 2:15-cv-01572-APG-DJA, 2022 U.S. Dist. LEXIS 122661, at *28 (D. Nev. July 11, 2022) (quoting *Washington Env't Council v.*

1    *Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013)). Thus, Ms. Leigh's declaration was appropriately

2    submitted to establish Article III standing before this Court.

3        **B. Laura Leigh's Declaration, dated August 27, 2025 is properly before this
         Court to review the IBLA's Order**

4

5        "When reviewing an agency decision, 'the focal point for judicial review should be the

6    administrative record already in existence, not some new record made initially in the reviewing

7    court.'" *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 450 F.3d 930, 943

8    (9th Cir. 2006) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Defendants object to Laura

9    Leigh's declaration as extrinsic evidence outside the administrative record. Dkt. 57, pp.9-10;

10   Dkt. 61, pp.11-12. Exceptions to this administrative rule exist, however.  *Ctr. for Biological*

11   *Diversity*, 450 FD.3d at 943; *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th

12   Cir. 1989); *Fishing Co. v. United States*, 195 F. Supp. 2d 1239, 1245 (W.D. Wash. 2002).

13   Extrinsic evidence may be considered (1) for background information, (2) where the record so

14   fails to explain agency action that judicial review is frustrated, (2) to determine whether the

15   agency has considered all relevant factors and has explained its decision, (3) when the agency

16   has relied on documents not in the record, and (4) when supplementing the record is necessary to

17   explain technical terms or complex subject matter. *Id.* As addressed below, in addressing the

18   IBLA's Order regarding administrative standing pursuant to 43 C.F.R. § 4.402(a), Ms. Leigh's

19   declaration contains statements that fit within the exceptions to the administrative record rule.

20       (1) Ms. Leigh's declaration is cited to explain that Tammi Adams is a member of WHE

21   and participated as an appellant before the IBLA; therefore, to the extent the administrative

22   record contains references to Ms. Adams, such evidence remains relevant. Dkt. 43, p.6, n.1; Dkt.

23   43-1, ¶7. This is not a disputed fact, with Defendants acknowledging Ms. Adams' role and

24   associated evidence. *See e.g.,* Dkt. 57, p.7 n.1; Dkt. 61, p.2, 8-9.  As background information, it

25   can properly be considered by the Court. *Thompson*, 885 F.2d at 555.

26       (2) Ms. Leigh's declaration is cited to explain the technical procedures followed by the

27   IBLA. Specifically, she states that "[t]The IBLA website https://www.doi.gov/oha/

28

organization/ibia/faqs/ How-Do-IAppeal-a-Decision-to-the-Board) provides that a notice of appeal need only 'briefly set out the reasons' for challenging a BLM decision. It 'does not need to be a full statement of your concerns.'" Dkt. 43, p.6; Dkt. 43-1, ¶8. As background information and to explain technical procedures, it is extrinsic evidence that can be considered. *Ctr. for Biological Diversity*, 450 F.3d at 943; *Thompson*, 885 F.2d at 555.

(3) The expansion of the Jupiter Mine is occurring with the Triple B Complex, which consists of the Triple B HMA, Maverick-Medicine HMA, and the Antelope HMA. AR_253. Ms. Leigh's declaration clarifies that only a portion of the Antelope HMA falls within the Complex (the portion located west of Highway 93). Dkt. 43, p.10; Dkt. 43-1, ¶13, As background information and to ensure that the record is clear, this evidence should be considered. *Ctr. for Biological Diversity*, 450 F.3d at 943; *Thompson*, 885 F.2d at 555; *Fishing Co.*, 195 F. Supp. 2d at 1245.

(4) Plaintiffs contend that BLM violated NEPA with its cumulative impact analysis. Dkt. 1, ¶43; Dkt. 43, p.24-25. Before the IBLA, Plaintiffs noted:

> There is a plethora of Nevada BLM EDO approved and proposed actions within and surrounding the Triple B wild horses (and potentially several other adjacent WHB herds), all of which impact the wild horses (and burros) within the Ely District.  The Nevada BLM violates NEPA by their failure to consider cumulative impacts on the Triple B Complex wild horses, their range habitat, and rangeland resources from past, present, and proposed "multiple uses."  Other Agency proposed multiple use projects for the Nevada EDO include, but are not limited to, mining expansion/drilling exploration/operations; groundwater well drilling expansion; herbicide treatments; multiple livestock crossing permits; ROWs for roads, water pipelines, and power lines; livestock grazing, cattle guard installation potentially life threatening to horses; "green energy" projects; etc. (see www.blm.gov and eplanning.blm.gov.)
> …
> The DR, FONSI, and Final EIS signed by Nevada BLM EDO on July 8, 2024 authorizes the expansion of the largest gold mine in Nevada without … demonstrating cumulative impacts nor mitigations of impacts to the Triple B Complex wild horses.

AR_006, AR_008; *see also* Dkt. 43, p.20, 28.

In addressing cumulative impacts for the Jupiter Project, BLM identified cumulative effect study areas (CESAs). Dkt. 61, p.5. Ms. Leigh's declaration is cited to note that the EIS for

1   the Jupiter Project defined the maximum CESA as containing 19,377,103 acres, with the entirety

2   of the Triple B Complex included within this acreage (as well as the Antelope Complex, Pancake

3   Complex, and Moriah Herd Area). Dkt. 43, p.10; Dkt. 43-1, ¶14. KG Mining, Inc. contends that

4   the CESA referenced by Plaintiffs is not correct as the maximum CESA identifies "the boundary

5   for all resources—not just wild horses" that may be impacted. Dkt. 61, p.5. Instead, they argue

6   that the 1,232,717-acre Triple B HMA is the proper CESA to consider for wild horse impacts. *Id.*

7   Laura Leigh addresses this, noting that impacts for wild horses should include, at a minimum, the

8   entirety of the Triple B Complex. Dkt. 43-1, ¶16. This conclusion is based on BLM admitting

9   that "wild horses move freely throughout the complex and the adjacent Cherry Springs Wild

10  Horse Territory." *Id.* (citing the draft EIS for the Jupiter Project, which can be found at Dkt. 44-

11  4, p.5);[1] *see also* Dkt. 43, pp.21-22; AR_22. That is, the wild horses that Plaintiffs have protected

12  interests in are horses that reside throughout the Triple B Complex and Cherry Springs Wild

13  Horse Territory.

14          Plaintiffs' motion is based, in part, on the fact that the IBLA did not properly consider the

15  geographic scope of the Jupiter Project's impact nor did the IBLA explain what area it

16  considered relevant for purposes of its review. Dkt. 43, pp. 20-21, 28. Accordingly, evidence

17  regarding CESAs should be considered by this Court so as not to frustrate judicial review and to

18  determine whether the IBLA considered all relevant factors and explained its decision.[2] *Ctr. for*

19  *Biological Diversity*, 450 F.3d at 943; *Thompson*, 885 F.2d at 555; *Fishing Co.*, 195 F. Supp. 2d

20  at 1245. Moreover, as the IBLA Court looked at the draft EIS in making its ruling, it is

21  appropriate for this Court to address the issue. *Id.*; *see also* Dkt. 43, p.22 (noting "the Board

22  made a determination regarding the proper scope of the Jupiter Project's geographic impact by

23  acting, on its own initiative, to selectively peruse and cite to BLM's DEIS, when an adjudication

---

25  [1] Defendant KG Mining, Inc. includes excerpts from the final EIS for the Jupiter Project with its
    briefing. *See* Dkt. 61-1. In the final EIS, BLM similarly says "[w]ild horses move freely
26  throughout the complex and the adjacent Cherry Springs Wild Horse Territory."

27  [2] In addition to Ms. Leigh's declaration, the draft EIS for the Jupiter Project, and the final EIS for
    the Jupiter Project, the administrative record contains some reference to CESAs:  xxxxxx

28                                                     4

1   of the merits was not only improper, but also, the complete administrative record was not yet

2   available to the parties or the Board").

3           (5) The administrative record establishes that Plaintiffs have frequently visited the Triple

4   B Complex to view wild horses and intend to continue such visits into the future. AR_0014,

5   AR022-023, AR_165; Dkt. 43, pp.24-25. Among the activities engaged in during these visits,

6   Ms. Leigh has documented the horses' movement between the HMAs of the Complex. AR_022;

7   Dkt. 43, p. 24.

8           Ms. Leigh's declaration contains statements that clarify her visits to the Triple B

9   Complex include visits to the Triple B HMA:

10          I thought by stating [in the IBLA record that] I have documented the movement
            between the HMAs, it is obvious that my visits include visits in the Triple B
11          HMA (as well as the Complex's other HMAs and WHT). However, had the
            Board asked for clarification, I could have provided further details.
12

13          These include:

14          a. Over the past decade, I have visited the Triple B HMA on average eight times
            per year. During these visits I document and enjoy the Triple B horses.
15

16          b. In addition, since 2011, WHE has sent volunteers to observe every gather
            operation that has been conducted in the Triple B Complex. (This does not
17          include gathers that use bait traps because BLM does not allow the public to
            observe gathers that use bait traps.) I have been present at the majority of these
18          gathers for a large portion of observation days.

19          c. Most recently, I observed a roundup in the Triple B HMA in 2022. I was not
20          personally at the roundup that occurred in 2024, but another WHE volunteer
            attended.
21
            d. On approximately September 1, 2024, I went into the Triple B HMA and took
22          photographs of some of the horses, including "Little Dove," a horse that I have
            known since her birth. During this visit, I saw many horses roaming through the
23          acres that are included in the expansion area of the Jupiter Project.

24
            e. In late April or early June of 2025, I again visited the Triple B HMA and drove
25          through the expansion area of the Jupiter Project. As a result of the Project, there
            was a lot of traffic and disturbed, muddy earth. I did not see Little Dove or many
26          of the horses that had been there in 2024. Instead, I only saw 2 dun stallions.

27   Dkt. 43-1, ¶28; *see also* Dkt. 43, p.25 n.14.

28                                              5
PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY
JUDGMENT

1    The IBLA had the authority to request a hearing for the purposes of addressing any

2    ambiguities or seeming conflicts in any evidence. 43 C.F.R. § 4.409(g). It arbitrarily chose not to

3    do so and ignored much of the evidence presented to the Board. *See* Dkt. 43, p.24-25.

4    Accordingly, to determine whether the Board has considered all relevant factors and has

5    explained its decision, Ms. Leigh's declaration should be considered. *Ctr. for Biological*

6    *Diversity*, 450 F.3d at 943; *Thompson*, 885 F.2d at 555; *Fishing Co.*, 195 F. Supp. 2d at 1245.

7    (6) Ms. Leigh's declaration provides clarification on injuries caused by the Jupiter

8    Project. Dkt. 43-1, ¶¶30-33, 36-38. Specifically, her statements recite where in the administrative

9    record the appellants commented on injuries associated with the Jupiter Project. *Id.* Plaintiffs

10    provide these statements as background and to assist the Court in examining the administrative

11    record. For this purpose, they are properly considered. *Ctr. for Biological Diversity*, 450 F.3d at

12    943; *Thompson*, 885 F.2d at 555; *Fishing Co.*, 195 F. Supp. 2d at 1245.

13    **C. The IBLA committed legal, factual, and procedural errors.**

14    Standing before the IBLA requires that the appellants be a party to the case and adversely

15    affected by the appealable decision. 43 C.F.R. §§4.401-4.402. The IBLA has "long held" that a

16    legally cognizable interest "may be based on a cultural, recreational, or aesthetic interest in the

17    use and enjoyment of the land (or its resources) or even an interest in adjacent land (or its

18    resources)." *Becharof Corp.*, 147 IBLA 117, 129 (1998); *see also Coalition of Concerned*

19    *National Park Retirees*, 165 IBLA 79, 84 (2005). Where the relationship is based on visiting a

20    project area, it is sufficient that appellants show they have visited either the project area or

21    adjacent areas. *Western Watersheds Project*, 185 IBLA 293, 300 (2016). In the alternative, an

22    appellant can establish standing by setting forth interests in resources. AR_013 (quoting *Board of*

23    *Commissioners of Pitkin County*, 173 IBLA 173, 178 (2007)). Where an interest in animals is

24    involved, the scope of the impacted area may be large. *See Lujan v. Defenders of Wildlife*, 504

25    U.S. 555, 566-67 (1992).

26    ///

27

28

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY
JUDGMENT

1    The IBLA is not an Article III court; however, judicial decisions on standing can

2    "provide a useful guide as to the types of interests which have been deemed relevant and the

3    concerns which are properly considered in adjudicating administrative appeals." *In re Pacific*

4    *Coast Molybdenum*, 68 IBLA 325, 331-32 (1982). For cases involving the Wild Horse Act and

5    NEPA, it is clear that a party "who observes or works with animals of a particular species in the

6    very area of the world where that species is threatened by a federal decision" may claim standing

7    "since some animals that might have been the subject of his interest will no longer exist." *Lujan*,

8    504 U.S. at 567; *see also Am. Horse Prot. Asso. v. Frizzell*, 403 F. Supp. 1206, 1214 (D. Nev.

9    1975) (finding an injury in fact where aesthetic or environmental interests are impacted).

10    Here, Plaintiffs have shown that they have protected interests in the wild horses of the

11    Triple B Complex, who reside in the Triple B HMA, Maverick-Medicine HMA, and the

12    Antelope HMA (as well as the Cherry Springs Wild Horse Territory (WHT)), and their interests

13    in these horses are impacted by the Jupiter Project. Dkt. 43, pp.22-34. WHE and its members

14    regularly visit the Complex's HMAs (including the Triple B HMA) to appreciate the wild horses,

15    and the public land's natural beauty; to engage in recreation; to monitor gathers in the Complex's

16    HMAs, and to document migration of the herds among the Complex's HMAs. AR_014-016;

17    AR_022. In addition to procedural harms attributed to BLM's failure to adhere to NEPA's

18    requirements, the Jupiter Project's direct and circumstantial effects will impact Plaintiffs'

19    interests as the Project will disturb the public land's natural beauty and cause the horses to lose

20    land habitat resources, as well as increasing the likelihood that BLM will imminently gather and

21    remove wild horses from the Complex. *Id.*, pp.12-14, 33-34.

22    The IBLA's first error in dismissing Laura Leigh and WHE's appeal involves the Board's

23    failure to consider 11 relevant statements of fact. Dkt. 43, pp.24-25. The Defendants do not

24    dispute any of the identified statements; therefore, Plaintiffs motion for summary judgment

25    should be granted. Fed. R. Civ. Proc. R. 56

26    The IBLA's second error occurred when the Board failed to articulate a rational

27    connection between the facts found and its ruling, making it impossible for the parties or this

28

7

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY
JUDGMENT

1    Court to understand the basis for its ruling. Dkt. 43, pp.25-26.  Specifically, the IBLA Order

2    says the administrative record does not establish appellants visited areas impacted by the Jupiter

3    Project, but no rationale connects the facts to this conclusion – especially in light of the Board

4    acknowledging (but not dismissing) the appellants' contention that the cumulative impacts from

5    the Jupiter Project significantly increase the potential for wild horse gathers and removals,

6    permanent sterilization and application of a plethora of fertility control procedures, and interferes

7    with and adversely affects their recreation and enjoyment of the Triple B Complex wild horses.

8    *Id.*

9         Where an agency's decision does not properly articulate the connection between relevant

10   facts and the ruling, the decision cannot survive arbitrary and capricious review. *League of*

11   *Wilderness Defs. v. United States Forest Serv.*, 549 F.3d 1211, 1218 (9th Cir. 2008). The

12   Defendants argue that the Board's decision was rational, but they do not directly address whether

13   or how the IBLA articulated a rationale connection between the facts found and its ruling. Dkt.

14   57, pp.5-8; Dkt. 61, pp.13-19. Accordingly, summary judgment is appropriate. Fed. R. Civ. Proc.

15   R. 56.

16        The IBLA's third error involves committing legal error in its interpretation and

17   application of *Elyse R. Gardner Walsh, Laura Leigh & Wild Horse Education*, (2018) – an order

18   without precedential value –, *W. Watersheds Project*, 185 IBLA 293 (2015); *Cascadia*

19   *Wildlands*, 188 IBLA 7 (2016), and *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). Federal

20   Defendants ignore Plaintiffs' arguments regarding this error. Defendant KG Mining, Inc.

21   addresses the cases but ignores the manner in which the facts of those differ from the above-

22   captioned case. *See* Dkt. 61, pp.16-18. Thus, summary Judgment should be granted. Fed. R. Civ.

23   Proc. R. 56.

24   ///

25   ///

26   ///

27   ///

28

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY
JUDGMENT

1

III.    **CONCLUSION**

2           For the foregoing reasons, Plaintiffs respectfully request that their summary judgment

3   motion be granted.

4   DATED:  March 9, 2026                    Respectfully Submitted,

5                                            _/s/ Jennifer Rae Lovko_
                                             Jessica L. Blome
6                                            (Cal. Bar No. 314898, pro hac vice)
                                             Jennifer Rae Lovko
7                                            (Cal. Bar No. 208855, pro hac vice
8                                            GREENFIRE LAW, PC
                                             2748 Adeline Street, Suite A
9                                            Berkeley, CA 94703
                                             (510) 900-9502
10                                           jblome@greenfirelaw.com
11                                           rlovko@greenfirelaw.com

12                                           _/s/ Brent M. Resh_
                                             Brent M. Resh
13                                           (Nevada Bar No. 14940)
                                             BRENT RESH LAW, PLLC
14                                           2401 La Solana Way
                                             Las Vegas, NV 89102
15                                           (702) 781-6903
16                                           brent@brentreshlaw.com

17                                           _Attorneys for Plaintiffs_

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO FEDERAL DEFENDANTS' AND KG MINING INC.'S CROSS-MOTIONS FOR SUMMARY
JUDGMENT