PARSONS BEHLE & LATIMER
Jim B. Butler, Nevada Bar ID No. 8389
Ashley C. Nikkel, Nevada Bar ID No. 12838
50 West Liberty Street, Suite 750
Reno, NV 89501
Telephone: 775.323.1601
Facsimile: 775.348.7250
jbutler@parsonsbehle.com
anikkel@parsonsbehle.com

*Attorneys for Defendant*
*KG Mining (Bald Mountain) Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERIOR BOARD OF LAND APPEALS, UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and KG MINING INC.,<br><br>Defendants. | Case No.  3:25-cv-00039-ART-CSD<br><br><br>**KG MINING (BALD MOUNTAIN) INC.'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56, Defendant KG Mining (Bald Mountain) Inc.[1] ("KG Mining") hereby submits this Reply in Support of its Cross-Motion for Summary Judgment (ECF No. 56, "Cross-Motion"). As outlined in KG Mining's Cross-Motion, this Court should affirm the decision of the Interior Board of Land Appeals ("IBLA" or "Board") dismissing Plaintiffs' challenge to the Bureau of Land Management's ("BLM's") approval of KG Mining's Juniper[2] Project, which is an expansion of the existing Bald Mountain Mine.

---

[1] Plaintiffs have named "KG Mining Inc." as a Defendant, but no such entity exists.
[2] Plaintiffs erroneously refer to the "Jupiter Project" throughout their Reply (*See* ECF No. 62 & 63).

PARSONS
BEHLE &
LATIMER

1

Plaintiffs Laura Leigh and Wild Horse Education ("WHE") (collectively, "Plaintiffs") have failed to carry their burden under the deferential standard of review and erroneously contend that this Court should consider evidence that was not presented to the IBLA. This Reply is based on the following Memorandum of Points and Authorities and all pleadings and papers on file herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Reply in Support of their Motion for Summary Judgment and Opposition to KG Mining and BLM's Cross Motions for Summary Judgment (ECF Nos. 62 & 63) ("Reply") appears to double down on a misplaced Article III standing argument. The question before the Court is whether Plaintiffs established standing with the IBLA under 43 C.F.R. § 4.410 (2024). It is not whether Plaintiffs established Article III standing with this Court. Indeed, KG Mining has not challenged Plaintiffs' Article III standing in this federal administrative review of the IBLA's decision to dismiss Plaintiffs' appeal.

This Court's review of an agency decision is limited to the administrative record as it existed at the time of the agency's decision. In dismissing the challenge to the Juniper Project, the IBLA properly recited the applicable regulation, its precedent, and applied those authorities to the materials before it to conclude that the Plaintiffs lacked standing. For these reasons, as well as those outlined in KG Mining's and BLM's Cross-Motions, the Court should affirm.

## I.    FACTUAL BACKGROUND

During the briefing before the IBLA, Plaintiffs and Tammi Adams responded to BLM and KG Mining's IBLA Motions to Dismiss with two declarations from Laura Leigh. *See* AR_165 (Laura Leigh Declaration in response to BLM Motion to Dismiss); AR_209 (Laura Leigh Declaration in response to KG Mining Motion to Dismiss). Those declarations only discussed the Triple B Complex. *See*, *e.g.*, AR_165 ("I have been visiting the Triple B Complex wild horses…."); AR_209 ("I have been documenting and enjoying wild horses in the Triple B Complex…."). The two declarations did not discuss any of Leigh's activities in the Juniper Project area, or even the Herd Management Area ("HMA") in which the Juniper Project is located (the Triple B HMA).

In its Order dismissing the matter for lack of standing, the Board expressly found Leigh had only shown that she (and Adams) had visited the 2,059,987-acre Triple B Complex. AR_257. The

PARSONS
BEHLE &
LATIMER

Triple B Complex consists of three HMAs: Triple B, Maverick-Medicine, and Antelope Valley. *Id.* Accordingly, Leigh's declaration only established that she had visited wild horses within a two-million-acre area that contains the Juniper Project. AR_258. But the Juniper Project will only disturb a small portion of that vast area, approximately four thousand acres. *Id.*

## II.    STANDARD OF REVIEW

As noted in the Cross-Motion, under the Administrative Procedure Act ("APA"), federal courts defer "to the decisions of the Interior Board of Land Appeals, and we will set aside an IBLA decision only if it is arbitrary, capricious, otherwise not in accordance with law, or not supported by substantial evidence." *Corrigan v. Haaland*, 12 F.4th 901, 906 (9th Cir. 2021); *Akootchook v. United States*, 271 F.3d 1160, 1164 (9th Cir. 2001); *see also* 5 U.S.C. § 706.

## III.    ARGUMENT

In their Reply, Plaintiffs focus on two arguments: (1) Leigh's new declaration (ECF No. 43, Ex. 1, ("New Declaration") is properly before the Court, and (2) the IBLA committed legal, factual, and procedural errors in three ways (consideration of statements of fact, articulation of a connection between the facts and its ruling, and use of the Walsh order). Both arguments lack merit. First, Plaintiffs relied on the New Declaration in their opening motion to support their substantive argument that Leigh had visited the project site, not for any of the reasons now outlined in the Reply. Second, Plaintiffs continue to incorrectly contend that generalized interest in a two-million-acre area can be sufficient to establish an interest in a four-thousand-acre project area. This position is not supported by IBLA's standing regulation or precedent. Further, IBLA considered Leigh's two deficient declarations, evaluated them in light of its standing regulation and precedent, and clearly concluded the facts did not meet the required standard. This is not error.

### 1.    *Leigh's new declaration is being offered as extrinsic evidence to undercut the IBLA's conclusion that Plaintiffs lacked standing.*

At first blush, Plaintiffs contend the New Declaration is offered to establish Article III standing for the purposes of the Plaintiffs' claims before this Court. But nowhere in Plaintiffs' opening Motion is the Declaration mentioned in the context of establishing Article III standing in the federal court review. Instead, the New Declaration is cited over 30 times in the opening Motion

PARSONS
BEHLE &
LATIMER

3

for substantive support, outlined in further detail below. In addition, nowhere in prior filings did the BLM or KG Mining contend Plaintiffs lack Article III standing in the instant litigation. Plaintiffs were a party in the underlying IBLA appeal, and their standing in federal court to seek review of that decision is not in dispute.

In practice, the New Declaration is being used as extrinsic evidence to bolster the standing argument that the IBLA rejected, not for the other purposes that Plaintiffs' Reply contends it is being presented. It is black letter law that "[w]hen a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). While some exceptions exist to this rule, Plaintiffs' actual use of the New Declaration falls outside those exceptions. Indeed, extrinsic information may be considered (1) for background information; (2) where the record fails to explain the agency action such that judicial review is frustrated; (3) to determine whether the agency considered all relevant factors and explained its decision; (4) when the agency relies on documents not in the record; and (5) when supplementing the record is necessary to explain technical terms or complex subject matter. *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). But the New Declaration does not serve any of those purposes.

These exceptions are narrowly construed and applied to exclude improper de novo review of agency decisions. *Id.* In particular, parties may not use extra-record evidence "as a new rationalization" for attacking an agency decision. *See Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811-12 (9th Cir. 1980). Parties seeking to expand the scope of review bear a "heavy burden to show that the additional materials sought are necessary to adequately review" an agency's decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). Plaintiffs fail to meet that burden here.

Most of the Plaintiffs' reliance on the New Declaration is cited to tie the standing argument to Plaintiffs' substantive NEPA claims, which are focused on cumulative effects. *See* ECF No. 43 (Plaintiffs' opening Motion), pp. 5:10; 5:18; 5:21; 5:27; 6:1; 9:6; 9:10; 9:22; 10:5; 10:7; 10:9; 10:14; 10:26; 14:22; 15:3; 15:26; 16:23; 23:22; 25:3; 29:5. This usage conflates the standing analysis with the substantive claims. The sleight of hand goes something like this: because Plaintiffs

PARSONS
BEHLE &
LATIMER

disagree with the scope of the BLM's cumulative effects analysis, their standing burden should be relaxed to consider any interest in the cumulative effects area Plaintiffs believe *should* have been used. But that would have required IBLA to credit Plaintiffs' arguments of error at the outset and also is not the IBLA standard. *See* Cross-Motion, pp. 12-18.

Other citations are for support of statements that were previously included in Leigh's declarations with IBLA. *Compare* ECF No. 43, pp. 8:3, 8:5; 12:15; 13:17; 27:4; 27:8, with AR _165 (first Leigh Declaration); AR_209 (Second Leigh Declaration). The use of the New Declaration in those instances is therefore duplicative and unnecessary to understand IBLA's clear conclusion that Plaintiffs lacked standing. Leigh already submitted two declarations to IBLA, which the Board expressly considered. *See* AR_256-57. This information is already in the administrative record. There is no need for the New Declaration. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996) ("The information contained in these documents can either be extracted from the record or is not necessary" for review of the agency action.).

Most egregiously, the new declaration includes facts that Leigh "would have [ ] provided." *See* Reply, p. 20, n. 26; *see also* pp. 14:8-15; 23:26; 24:28, 28:27. This includes post-decision information, which may not be advanced as a new rationalization for attacking an agency's decision. *See* ECF No. 43, Ex. 1 (Declaration of Laura Leigh, ¶ 28(d) (events of September 1, 2024, while briefing on the standing issue was complete and awaiting the IBLA's order); ¶28(e) (events of April or June 2025)). The reviewing court considers exceptional supplemental information to "identify and plug holes in the administrative record," and it is not appropriate to consider information that post-dates the agency's decision. *See Leigh v. U.S. Dep't of Interior*, 2024 WL 4279156 (D. Nev. Sept. 23, 2024) (*quoting Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005) and rejecting consideration of information that post-dated the agency decision).

And finally, Plaintiffs rely on the New Declaration to discuss facts underlying the *Walsh* proceedings, which are unnecessary in the context of the limited purpose for which IBLA referenced that Order. *See* Reply, p. 27:28, 27:4.

As to the specific contentions Plaintiffs make concerning the applicability of the extrinsic

PARSONS
BEHLE &
LATIMER

5

evidence exceptions, none of them bear weight. First, the extent of Adams' involvement in the underlying appeal is clear from WHE's own briefing and IBLA's order. AR 197-198 (WHE Response to Motion to Dismiss); AR_252, 255-59 (IBLA order mentioning Adams).

Second, the technical procedures followed by the IBLA are available by regulation. *See* 43 C.F.R. Part 4. If Plaintiffs were seeking to provide a link to the IBLA website for the FAQ page, they could have chosen to include that page in their Request for Judicial Notice (*see* ECF No. 44). They did not.

Third, whether only a portion of, or the entire Antelope HMA falls within the Triple B Complex is irrelevant to the question of whether Plaintiffs established standing with the IBLA. Plaintiffs' reliance on their interests in the two-million-acre Triple B Complex, rather than the lands affected by the Juniper Project, was the crux of IBLA's holding. What portion of the Antelope HMA falls within that Complex is irrelevant.

Fourth, as outlined in KG Mining's Cross-Motion, the 19-million-acre maximum cumulative effects study area ("CESA") is for all resources, not just wild horses, and is dictated by the fact that the largest CESA boundary is for cumulative air quality impacts. *See* Cross-Motion, pp. 5-7. The cumulative effects study area for wild horses is the Triple B Herd Management Area. *Id.* As was argued in KG Mining's Cross-Motion, this fact is irrelevant to the Court's evaluation of IBLA's application of its standing regulation and precedent. *Id.* That Leigh disagrees with the geographic scope of the cumulative effects area is yet another example of Plaintiffs conflating the standing analysis with the underlying NEPA claims and should be disregarded as unnecessary.

Fifth, the Court should reject any attempt to use the New Declaration to improve upon the facts that were presented to IBLA. The Board's decision to hold a hearing or not is discretionary. 43 C.F.R. § 4.409(g) (2024). This judicial review of administrative action is not the appropriate venue to raise belated facts, especially to the extent they post-dated the agency's decision.

Sixth, and finally, use of a declaration to recount where in the administrative record Plaintiffs commented on injuries associated with the Juniper Project is facially improper. Legal argument can be supported by citation to the administrative record without using the New Declaration.

PARSONS
BEHLE &
LATIMER

6

### 2. *IBLA's decision should be affirmed.*

Plaintiffs' limited argument in their Reply on the merits of their appeal demonstrates its lack of merit. In their Reply, Plaintiffs correctly recognize that legally cognizable interests may include a variety of interest but fail to recognize the extent of the geographic nexus required. An interest in resources is not an alternative means of satisfying the standing threshold with IBLA. Plaintiffs refer to AR_013 for its quote of *Board of Commissioners of Pitkin County*, 173 IBLA 173, 178 (2007), supporting the proposition that mere interest in resources is enough. But that is not what that decision holds. *Board of Commissioners* held that the appellants were not required to state the actual names of the parcels that were affected by the BLM's decision, it was enough for some of the appellants to "declare that they recreated on, visited, explored, or otherwise enjoyed the lands leased or offered for leasing by BLM in May 2004." 173 IBLA at 180. Other appellants did not demonstrate by declaration or other credible evidence that their members use or would be adversely affected by the decision on appeal and were subsequently dismissed as parties. *Id.* Accordingly, this argument is unavailing.

Next, Plaintiffs continue to attempt to use Article III standing jurisprudence when IBLA clearly rejects the use of the zone-of-interests test and instead applies its standing regulation to require a geographic nexus. *See Bassler,* 197 IBLA 280, 285 (2021) (*citing Animal Protection Institute of America*, 118 IBLA 63, 66 (1991)) (1991 WL 255485) ("Standing before the Board of Land Appeals is governed by [then] 43 C.F.R. § 4.410(1) and is not governed by Section 702 of the Administrative Procedure Act.").

Plaintiffs then make three contentions of error. First, Plaintiffs allege that because BLM and KG Mining do not dispute any of the statements of fact, their Motion should be granted. Reply, p. 7:22-25. But where, as here, review of an agency action is sought not based upon a "specific authorization in the substantive statute, but only under the general review provisions of the APA," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), the Court does not determine whether there are disputed issues of material fact as it would in a typical summary judgment proceeding. Rather, the court's review is based on the administrative record. *Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).

PARSONS
BEHLE &
LATIMER

7

Second, Plaintiffs' assertions that IBLA's decision was impossible to understand or did not properly articulate the connection between the relevant facts and the ruling is mistaken. Reply, pp. 7:26-15. IBLA clearly identified that the geographic nexus Plaintiffs relied upon was too broad to support standing under its rules and precedent. *See* AR_257 ("there is no evidence that Leigh or Adams has ever visited or viewed wild horses at or near the Mine or the public lands that may be impacted by the Juniper Project. Rather, the evidence shows only that Leigh and Adams have visited the Triple B Complex to view wild horses.").

Third, Plaintiffs disagree with KG Mining's extensive legal analysis by simply saying that KG Mining "ignores the manner in which the facts of those [cases] differ from the above-captioned case." Reply, p. 8:19-22. KG Mining provided robust explanation on how the facts in those cases did, or did not, apply to the matter at hand (Cross-Motion, pp. 16-18) and cannot speculate as to what Plaintiffs mean by that conclusory statement.

## IV.    CONCLUSION

IBLA clearly identified the correct regulation governing standing, applied that regulation consistent with its precedent, and concluded Plaintiffs failed to establish the required causal and geographic nexus for their challenge. In this venue, Plaintiffs have failed to establish that IBLA's decision dismissing their challenge to the Juniper Project was arbitrary, capricious, otherwise not in accordance with law, or not supported by substantial evidence. Accordingly, this Court should affirm IBLA's dismissal.

DATED this 23rd day of March, 2026.        PARSONS BEHLE & LATIMER

*/s/ Ashley C. Nikkel*
Jim B. Butler, Nevada Bar ID No. 8389
Ashley C. Nikkel, Nevada Bar ID No. 12838
50 West Liberty Street, Suite 750
Reno, NV 89501
jbutler@parsonsbehle.com
anikkel@parsonsbehle.com
*Attorneys for Defendant KG Mining*
*(Bald Mountain) Inc.*

PARSONS
BEHLE &
LATIMER

8

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of the law firm of Parsons Behle & Latimer and that on the 23rd day of March, 2026, I filed a true and correct copy of the foregoing document, **KG MINING (BALD MOUNTAIN) INC.'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT,** with the Clerk through the Court's CM/ECF system, which sent electronic notification to all registered users as follows:

Brent M. Resh, Esq.
Brent Resh Law, PLCC
2104 La Solana Way
Las Vegas, NV 89102
Email: brent@brentreshlaw.com

*Attorneys for Plaintiffs*

Jessica L. Blome, Esq.
J. Rae Lovko, Esq.
Greenfire Law, PC
2748 Adeline St., Suite A
Berkeley, CA 94703
Email: jblome@greenfirelaw.com
Email: rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

Sue Fahimi, Esq.
Nicole Leibow, Esq.
United States Attorney's Office
501 Las Vegas Blvd., Suite 1100
Las Vegas, NV 89101
Email: nicole.leibow@usdoj.gov

*Attorneys for Federal Defendants*

*/s/ Nancy A. Prout*
Employee of Parsons Behle & Latimer

PARSONS
BEHLE &
LATIMER

9