UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>INTERIOR BOARD OF LAND APPEALS, UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and KG MINING,<br><br>                                    Defendants. | Case No. 3:25-cv-00039-ART-CSD<br><br>ORDER GRANTING DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 60, 61) |

Plaintiffs Laura Leigh and Wild Horse Education filed this lawsuit seeking review of an opinion issued by the Interior Board of Appeals ("IBLA") finding Plaintiffs did not have standing to appeal a decision by the Bureau of Land Management ("BLM"). (ECF No. 1.) Currently before the Court are the cross motions for summary judgment filed by the parties.

The Court finds that Plaintiffs failed to establish that they were adversely affected by the BLM's decision, and consequently, the IBLA's determination that Plaintiffs lacked standing to appeal such action under the applicable regulations was not arbitrary and capricious. Accordingly, the Court denies Plaintiffs' motion for summary judgment (ECF No. 43) and grants Defendants' cross-motions for summary judgment (ECF Nos. 60; 61).

**I.      BACKGROUND**

**A. NEPA Process and Regulatory Framework**

The following facts are primarily derived from the administrative record ("AR"). Defendant KG Mining operates the Bald Mountain Mine, a large-scale, open-pit gold mine in northwestern White Pine County, Nevada, on lands primarily administered by BLM. (AR 252.) The mine has been in continuous

1

operation for more than 40 years, and in 2020, KG Mining proposed to amend its plan of operations for the North Operations Area ("NOA") of the mine. (AR 253.) The amendment, which is frequently referred to as the Juniper Project, would disturb an additional 3,969 acres of public lands, most of which are adjacent to or near existing mine facilities, and would extend the NOA mine life by 11 years. (AR 253.)

The Bald Mountain Mine operates under mining plans of operations that are approved by BLM pursuant to its mining regulations at 43 C.F.R. 3809. (ECF No. 61 at 2.) When BLM acts under its 43 C.F.R. 3809 authority, it must comply with the National Environmental Protection Act ("NEPA"). (AR 253.) To that end, BLM prepared a draft environmental impact statement ("DEIS") analyzing the environmental impacts of the proposed Juniper Project. (AR 253.) BLM then released the DEIS for public review and comments, made necessary changes, and issued a final environmental impact statement ("FEIS"). (AR 254.) Plaintiffs submitted comments on the DEIS. (AR 255.)

NEPA regulations[1] required BLM to evaluate direct, indirect, and cumulative effects to each potentially impacted resource. Direct effects are "those which are caused by the action and occur at the same time and place." 40 C.F.R. § 1508.1(g)(1). Indirect effects "are caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable." 40 C.F.R. § 1508.1(g)(2). Cumulative impacts are the "impact[s] on the environment which result[] from the incremental impact of the action when added to other past, present or reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other action." 40 C.F.R. § 1508.1(g)(3). Among other considerations, the FEIS analyzed potential impacts to wild horses in the 1,232,717-acre Triple B Herd Management Area ("HMA"), which

---

[1] All citations to regulations are to those in effect when BLM was preparing the DEIS, FEIS, and when the IBLA's order was published.

2

overlaps with the existing NOA and the proposed area of expansion. (ECF No. 61-1 at 11–13.) BLM also identified a larger maximum cumulative impacts study area ("CESA") to evaluate cumulative air quality impacts. (*Id.*)

Based on the FEIS, BLM issued a decision approving the Juniper Project. (AR 254.)

### B. IBLA Decision

Plaintiffs appealed BLM's decision to approve the Juniper Project. (AR 254.) In response, Defendants filed motions to dismiss the appeal for lack of standing. (AR 254.)

To appeal a BLM decision to the IBLA, an appellant must demonstrate standing under 43 C.F.R. § 4.410. This provision provides that "[a]ny party to a case who is adversely affected by a decision of the [BLM] or Office or an administrative law judge has the right to appeal to the [IBLA]." 43 C.F.R. § 4.410(a). An individual or organization is a party to a case if they have "taken action that is the subject of the decision on appeal, is the object of that decision, or ha[ve] otherwise participated in the process leading to the decision under appeal." 43 C.F.R. § 4.410(b). A party to a case is adversely affected "when that party has a legally cognizable interest, and the decision on appeal has caused or is substantially likely to cause injury to that interest." 43 C.F.R. § 4.410(d).

The IBLA concluded that Leigh and Tammi Adams[2] satisfied the "party to a case" requirement because they submitted comments on the DEIS. (AR 255.) However, the IBLA dismissed the appeal because it concluded that Leigh and Adams failed to demonstrate a legally cognizable interest substantially likely to be injured by the Juniper Project. (AR 259.) While the IBLA recognized that Plaintiffs asserted a strong interest in wild horses, and visited the Triple B

---

[2] The IBLA appeal was filed by WHE, Laura Leigh, and Tammi Adams. (AR 001.) Here, however, the Plaintiffs are WHE and Laura Leigh.

Complex[3] many times in the past, because neither Leigh nor Adams ever visited or viewed wild horses "at or near the Mine or the public lands that may be impacted by the Juniper Project," the Court found that they could not show a legally cognizable interest that is substantially likely to injured by the Juniper Project. (AR 257.)

In reaching this conclusion, the Court found a similar case, also involving Leigh, to have persuasive value. (AR 257–58.) In that case, one plaintiff, Elyse Gardner Walsh, was found to have standing because she had visited the mine project area and had seen evidence there of wild horses from neighboring HMAs. (AR 257–58.) Leigh, however, was not found to have "shown a legally cognizable interest that was substantially likely to be injured by the project because, although she had visited the neighboring HMAs that 'encompass roughly 200,000 acres,' she had never visited the project area." (AR 257–58 (citing Order, *Walsh*, IBLA 2018-0035, Appeal by Laura Leigh and Wild Horse Education Dismissed; Petition for Stay Denied (Jan 23. 2019)).)

The IBLA also rejected Leigh's contention that because she had standing to challenge decisions affecting wild horses in the past, such a finding should be sufficient to establish standing in the instant appeal. (AR 256.) The IBLA explained that because an "appellant must establish standing to challenge each decision they appeal to [the IBLA]," Leigh was required to independently demonstrate standing under 43 C.F.R. § 4.410 to challenge BLM's decision on the Juniper Project. (AR 256.) Additionally, those cases involved challenges to wild horse gathers, and so could not shed light on whether Leigh had a legally cognizable interest that is substantially likely to be injured by the Juniper Project, because that decision does not make any decisions related to wild horses. (AR 257.)

---

[3] The Triple B Complex consists of the Triple B, Maverick-Medicine, and Antelope Valley HMAs and encompasses 2,059,987 acres. (AR 257.)

Because Leigh and Adams did not show that BLM's decision was substantially likely to injure their legally cognizable interests, the IBLA concluded that WHE had not demonstrated representational standing to appeal. (AR 259.)

On December 23, 2023, Plaintiffs filed the instant action seeking judicial review of the IBLA's standing determination. (ECF No. 1.) Plaintiffs subsequently filed a motion for summary judgment. (ECF No. 43.) Government defendants and KG Mining each filed combined cross-motions for summary judgment and responses to Plaintiffs' motion for summary judgment. (ECF Nos. 60; 61). Plaintiffs then filed a combined response to Defendants' cross-motions for summary judgment and a reply in support of their motion for summary judgment. (ECF No. 62.) Defendants then filed their respective replies. (ECF Nos. 65; 66.)

**II.   LEGAL STANDARD**

**A. IBLA and Administrative Standing**

The IBLA has repeatedly held that it is "not bound by the Constitutional principles of standing and [it does] not require appellants to satisfy the zone of interests test." *Bassler,* 197 IBLA 280, 285 (2021). Instead, standing to appeal to the IBLA is "governed exclusively by [IBLA's] regulations and [] decisions interpreting those regulations." *Id.*

As explained above, the relevant regulations provide that "[a]ny party to a case who is adversely affected by a decision of the [BLM] or Office or an administrative law judge has the right to appeal to the [IBLA]." 43 C.F.R. § 4.410(a). An individual or organization is a party to a case if they have "taken action that is the subject of the decision on appeal, is the object of that decision, or ha[ve] otherwise participated in the process leading to the decision under appeal." 43 C.F.R. § 4.410(b). A party to a case is adversely affected "when that party has a legally cognizable interest, and the decision on appeal has caused or is substantially likely to cause injury to that interest." 43 C.F.R. § 4.410(d). "The legally cognizable interest must be shown to have been held by the appellant at

the time of the decision that it seeks to appeal." *Western Watersheds Project*, 185 IBLA 293, 298 (2015).

There is no dispute that Plaintiffs were a party to the BLM's decision. The parties disagree only over the IBLA's determination that BLM's decision did not cause, or was not substantially likely to cause, an injury to Plaintiffs' legally cognizable interests.

### B. Standard of Review

Judicial review of decisions by the IBLA is conducted under the Administrative Procedure Act ("APA"). *See e.g., Baker v. United States*, 613 F.2d 224, 226 (9th Cir. 1980). The APA instructs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," as well as agency action taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). The reviewing court must determine whether the agency's decision was based on a consideration of the relevant factors or whether there has been a clear error of judgment. *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Hells Canyon Alliance v. U.S. Forest Serv.*, 227 F.3d 1170, 1177 (9th Cir. 2000). An action is arbitrary and capricious if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency . . . ." *Bark v. United States Forest Serv.*, 958 F.3d 865, 869 (9th Cir. 2020) (internal citation omitted).

In deciding whether to grant summary judgment on an APA challenge, the district court "is not required to resolve any facts." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Instead, the court determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*

### III.    DISCUSSION

The primary issue before the Court is whether the IBLA properly determined that Plaintiffs lacked standing to challenge the BLM's decision on the Juniper Project. Plaintiffs claim that the decision violated section 706(2) of the APA because the IBLA (1) adjudicated the issue of the proper scope of the Juniper Projects impacted area without briefing or benefit of the complete administrative record, (2) ignored material facts, (3) failed to articulate a rational connection between the facts found and its ruling, and (4) erroneously interpreted and applied legal precedent. (ECF No. 43 at 6.) Defendants argue that (1) the IBLA appropriately considered standing based on the information before it, (2) Plaintiffs' interest in a two-million-acre area lacks the causal connection necessary to create standing, (3) approval of the Juniper Project is not causally connected to increased gathers, and (4) the IBLA correctly applied its precedent. (ECF Nos. 60; 61.) The Court will address each argument in turn.

### A. Judicial Notice and Extra-Record Evidence

Plaintiffs request that the Court take judicial notice of a number of administrative documents including: (1) the 2017 Antelope and Triple B Complexes Gather Plan Final Environmental Assessment; (2) the 2023 Bald Mountain Mine Plan of Operations Amendment Juniper Project Draft Environmental Impact Statement; (3) the 2024 Bald Mountain Mine Plan of Operations Amendment Juniper Project Final Environmental Impact Statement; (4) the 2010 Wild Horses and Burros Management Handbook, H-4700-1; (5) and a July 2022 BLM public announcement entitled "Bureau of Land Management to begin the FY2022 Triple B Complex Wild Horse Gather." (ECF No. 44.) Plaintiffs also request judicial notice of several IBLA decisions and orders. (*Id.* at 5–6.) Defendants do not oppose judicial notice of the Bald Mountain DEIS and FEIS, or the IBLA decisions and orders. (ECF No. 45 at 1–2.) Defendants, however, do argue that the other documents should not be judicially noticed because they

constitute extra-record evidence not within one of the recognized exceptions, and Plaintiffs waived their judicial notice arguments. (*Id.* at 5–10.)

Judicial notice may be taken of facts "not subject to reasonable dispute" because the facts are either (1) "generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The APA provides that courts reviewing agency decisions "shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. As a result, "[j]udicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). The Ninth Circuit recognizes exceptions to this rule when: (1) consideration of the extra material is "necessary to determine whether the agency considered all of the relevant factors and adequately explained its decision;" (2) the agency itself considered documents not in the administrative record; (3) supplementation of the administrative record is "necessary to explain technical terms or complex subject matter;" or (4) the plaintiff makes a showing that the agency acted in bad faith. *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450 (citations omitted).

Plaintiffs specifically argue that the Court can take judicial notice of the Triple B Gather Plan Final Environmental Assessment, the Handbook, and the 2022 BLM Announcement because they are relevant in establishing the impact of the Juniper Project on wild horses. (ECF No. 44 at 3.) However, the original record adequately explains the basis of the IBLA's decision and shows that the IBLA considered the relevant factors, including the impact on wild horses in the Triple B HMA. The IBLA did not rely on the information contained within the proffered documents, and the information does not address issues that are not

in the record.

Additionally, this seems to be an attempt on Plaintiffs' part to supplement the administrative record in an untimely manner, as a scheduling order directed the parties to file the certified record by August 8, 2025. (ECF No. 40.) However, a "party cannot circumvent the rules governing administrative record supplementation by asking for judicial notice." *Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at \*1 (9th Cir. Feb. 1, 2022); *see also Rybachek v. U.S. E.P.A.*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (rejecting a motion for judicial notice because "[j]udicial review of agency actions should generally be confined to the original record upon which the actions were based") (citations omitted). Accordingly, the Court declines to judicially notice the Triple B Gather Plan Final Environmental Assessment, the Handbook, and the 2022 BLM Announcement.

In support of their motion for summary judgment, Plaintiffs also filed a new declaration from Leigh, dated August 27, 2025. (ECF No. 43-1.) Defendants contend that Plaintiffs may not rely on this declaration because the Court is limited to the agency record when reviewing an administrative decision under the APA.[4] (ECF Nos. 60 at 9–10; 61 at 11–12.)

The Court agrees with Defendants. Leigh's declaration adds new information that was not before the IBLA when it ruled on Plaintiffs' standing, including new allegations about 2024 and 2025 visits to the Triple B HMA, which occurred after the IBLA's decision. (ECF No. 43-1.) Additionally, much of the

---

[4] Plaintiffs also argue in their motion for summary judgment that had they known that IBLA required allegations of visiting the Triple B HMA, they would have specifically stated that they have visited that area. (ECF No. 43 at 25 n.14.) However, Plaintiffs had multiple opportunities to submit declarations to the IBLA. (*See* AR 165 (Declaration in Response to BLM Motion to Dismiss)); (AR 209 (Declaration in Response to KG Mining Motion to Dismiss)), (AR 22–23 (Declaration in Support of Reasons)). Additionally, the Court is limited to reviewing information that was in front of the IBLA at the time it made its decision, and so declines to consider such allegations. *See Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450.

information contained within Leigh's declaration can be found in other parts of the administrative record and Plaintiffs have not shown that an exception applies so as to admit this extra-record evidence. (*See* AR 165 (Declaration in Response to BLM Motion to Dismiss)); (AR 209 (Declaration in Response to KG Mining Motion to Dismiss)); (AR 22–23 (Declaration in Support of Reasons)). The Court thus declines to review any information contained solely in this new declaration that was not before the IBLA when it made its decision.

### B. Standing

#### i. The IBLA Did Not Commit Procedural Error

Plaintiffs first contend that the IBLA committed procedural error because it improperly referenced DEIS pages concerning project geography, and thus inappropriately adjudicated the appropriate scope or boundaries of the Juniper Project's impacted area. (ECF No. 43 at 20–22.) In response, Defendants contend that the IBLA appropriately considered the threshold standing issue based on information submitted and cited by the parties. (ECF Nos. 60 at 7–8; 61 at 18–19.)

As an initial matter, the IBLA reasonably relied on the FEIS, as all parties cited the document in their motions, to understand the basic parameters of the project area. (AR 257.) There is no evidence that such a review is impermissible under the IBLA's regulations or precedent. Additionally, any citations to the DEIS were used to establish that Plaintiffs were "part[ies] to a case," or reflect the same numbers as are found in the FEIS. (AR 253–54.)

Plaintiffs argue, that by considering the DEIS, the IBLA prejudicially defined the Juniper Project's impacted area as the Triple B HMA—used by BLM to assess wild horse impacts—rather than the broader Triple B complex, which BLM used to evaluate cumulative air impacts. (ECF No. 43 at 21–22.) They contend this narrower definition limited the project area and their ability to establish standing. (*Id.*) As explained below, however, the IBLA's determination

was reasoned and consistent with its precedent, and therefore not prejudicial.

Accordingly, the Court finds that Plaintiffs have not shown prejudice from the IBLA's consideration of additional DEIS pages or its alleged failure to review the full administrative record. *See Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his substantial rights, which is to say, not merely his procedural rights." (internal quotations and citations omitted)). Any error was therefore harmless.

### ii.  The IBLA Articulated a Rational Connection Between the Facts and the Choice Made

Plaintiffs argue that the IBLA erred when it concluded that Plaintiffs did not show a legally cognizable interest that was substantially likely to be injured by the Juniper Project, because the IBLA did not consider material facts, and failed to articulate a rational connection between the facts found and its ruling. (ECF No. 43 at 24–26.) Plaintiffs essentially fault the IBLA for too narrowly construing the impacts of the Juniper Project, and therefore the causal connection between the approved action and the injury alleged. (*See id.*)

A party appealing an agency decision to the IBLA has the burden to "make colorable allegations of an adverse effect, supported by specific facts, set forth in an affidavit, declaration or other statement of an affected individual that are sufficient to establish a causal relationship between the approved action and the injury alleged." *Bd. of Cnty. Comm'rs of Pitkin Cnty., Colorado,* 186 IBLA 288, 297 (2015). A hypothetical or speculative injury is insufficient to establish standing. *Western Watersheds Project,* 185 IBLA 293, 299 (2015). "Standing will only be recognized where the threat of injury is real and immediate." *Id.* (quoting *Laser, Inc.,* 136 IBLA 271, 274 (1996)).

Plaintiffs argue that in considering whether Plaintiffs would be adversely affected by the Juniper Project, the IBLA did not consider the proper geographic

scope of the Juniper Project's impact. (ECF No. 43 at 25.) Essentially, Plaintiffs contend that the relevant area for analyzing standing includes the entire cumulative-effects study area. (*See id.*) However, the IBLA has continuously held that an appellant must demonstrate a connection between the lands subject to the decision on appeal and the appellant's activities and interests, specifically, that an appellant has used or in the future will use the lands impacted by the decision on appeal. *See e.g., Wildlands Defense,* 192 IBLA 209, 217–18 (2018); *Theodore Roosevelt Conservation P'ship,* 178 IBLA 201, 208 (2009). Because Plaintiffs only showed visits to the larger Triple B Complex, and not use and enjoyment of the specific lands affected by the Juniper Project, the IBLA reasonably applied its own precedent interpreting its regulation. And the IBLA's explanation—which recognized that other than Tammi Adam's claim that she has flown over the Mine by commercial jet, there is no evidence that Plaintiffs viewed wild horses at or near the Juniper Projects or public lands that may be impacted by the project—reflects a rational connection between the facts shown and the decision the IBLA made. (AR 257.)

Furthermore, Plaintiffs argue that the cumulative impacts from the Juniper Project "significantly increase the potential for wild horse gathers and removals, permanent sterilization and application of a plethora of fertility control procedures." (ECF No. 43 at 25–26.) Those cumulative impacts, they contend, will interfere with and adversely affect their recreation and enjoyment of the wild horses within the Triple B Complex, thus establishing standing. (*Id.*) Additionally, they argue that BLM will rely on the loss of habitat caused by the Juniper Project to justify a gather operation. (*Id.*) However, as Defendants point out, BLM's decision is not related to wild horses and does not authorize or cause any change in wild horse management. (*See* ECF No. 61-1.) Even if the Juniper Project was never approved, BLM could perform a gather as the Wild Free-Roaming Horses and Burros Act directs the BLM to remove excess wild horse from public lands

when an overpopulation of wild horses exists, and as Plaintiffs have noted, BLM has already approved a ten-year gather plan for the Triple B Complex. *See Friends of Animals v. Silvey,* 353 F. Supp. 3d 991, 1005 (D. Nev. 2018), *aff'd,* 820 F. App'x 513 (9th Cir. 2020). Plaintiffs' arguments alleging that they would be adversely affected by the Juniper Project causing increased gathers are entirely speculative and thus insufficient to establish standing.

Plaintiffs also argue that IBLA erred by not considering a number of facts without explaining its basis for doing so. (ECF No. 43 at 24–25.) These facts[5] essentially establish that Plaintiffs regularly visited the wild horses, which move freely within and between the HMAs of the Triple B Complex. (*Id.*) The IBLA, however, did mention these facts, explicitly stating that Leigh and Adams have a strong interest in horses, evidenced by frequent visits to Triple B Complex HMAs, and that WHE is a non-profit which exists to protect wild horses and burros. (AR 256–57.) The IBLA also recognized Plaintiffs' arguments that horses throughout the Triple B Complex would be harmed by the cumulative impacts from the Juniper Project. (AR 256.) Though brief, these findings demonstrate that the IBLA considered Plaintiffs' facts, and the Court will not substitute its judgment for that of the agency. *Natural Resources Defense Council, Inc. v. Hodel,* 819 F.2d 927, 929 (9th Cir.1987). Moreover, the IBLA did not have to mention every comment that Plaintiffs find relevant,[6] as the IBLA reasonably determined, by reference to the relevant facts before it and its own precedent, that Plaintiffs did not demonstrate injury to its own legally cognizable interest, as required by 43 C.F.R. § 4.410.

The Court thus finds that the IBLA's reasoning reflects a rational

---

[5] The Court addresses some of the other facts that Plaintiffs contend were not mentioned by the IBLA in its analysis above.

[6] An agency is "not required to discuss each piece of evidence submitted." *Pirir-Boc v. Holder,* 750 F.3d 1077, 1086 (9th Cir. 2014) (internal quotations and citation omitted).

connection between the regulatory standard and the facts before the agency, and its decision was not arbitrary and capricious.

### iii.  The IBLA Decision Cites Supportive Precedent

Plaintiffs also challenge the legal cases that the IBLA cited as support for the conclusion that Plaintiffs did not demonstrate standing to appeal BLM's decision. (ECF No. 43 at 26–34.) Plaintiffs reason that the IBLA committed legal error in its interpretation and application of these sources because the facts of these cases are distinguishable. (*Id.*) Plaintiffs' argument is unpersuasive.

Plaintiffs first contend that *Western Watersheds Project*, 185 IBLA 293 (2015), is distinguishable because appellant, unlike Plaintiffs, did not raise cumulative impacts, and thus the scope was limited to a specifically defined area. (ECF No. 43 at 26–29.) In that case, BLM proposed to undertake various vegetation and riparian improvement treatments to improve the adjacent Newark and Huntington watersheds. *Western Watersheds Project*, 185 IBLA at 294–98. Treatments would occur in smaller, distinct areas. *Id.* However, contrary to Plaintiffs' contentions, the IBLA decided that appellant had not alleged a legally cognizable injury that was likely to be substantially injured because he had only vaguely averred visiting the larger project area, and not any of the specific area where vegetation treatments or riparian treatments—or adjacent/nearby lands likely to be affected—were to occur. *Id.* at 300–01. While the facts of each case are different, Plaintiffs still are not able to aver visiting the area that BLM analyzed for cumulative effects on wild horses.

Plaintiffs next challenge the IBLA's citation to *Cascadia Wildlands*, 188 IBLA 7 (2016). In that case, BLM analyzed 1,168 acres for timber harvest in the environmental assessment, but the timber sale only covered 344 acres. *Cascadia Wildlands*, 188 IBLA at 11–12. Because appellants in that case did not aver specific facts showing their use of the 344 acres to be sold, the IBLA concluded that appellants could not establish standing. *Id.* Similarly, here, Plaintiffs alleged

14

their connection to the Triple B Complex without establishing a causal connection between impacts from the Juniper Project and that larger area.

Plaintiffs also contend that the IBLA erred in citing to *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), in support of its conclusion that Plaintiffs must have averred use of the impacted area and not an area roughly in the vicinity to have a legally cognizable interest that was substantially likely to be injured by the Juniper Project. (ECF No. 43 at 30–32.) Plaintiffs argue that the IBLA wrongly ignored the Supreme Court's language that where animals are involved, the scope of the impacted area may be large. (*Id.* at 31.) Plaintiffs, however, misstate the IBLA's analysis. The IBLA reasoned that Plaintiffs could not show they would be adversely impacted by the Juniper Project because they did not allege visiting or viewing "wild horses at or near the Mine, *or on the public lands that may be affected by the Juniper Project.*" (AR 258 (emphasis added).) Contrary to Plaintiffs' contentions, *Lujan* does not mandate a finding that the impacted area constituted the entire two-million acres of the Triple B complex, and thus the IBLA did not err when citing the case.

Plaintiffs finally argue that the IBLA should not have considered *Walsh* because it is an unpublished decision, and therefore has no precedential value. (ECF No. 43 at 32–34.) However, the IBLA explicitly stated that it was only considering the case for its persuasive value as the facts were similar to the facts in the instant case before it. (AR 258.) Additionally, Plaintiffs contend that *Walsh* is distinguishable because Leigh was not able to file supplemental declarations to correct the deficiencies identified by the IBLA, in that case. (ECF No. 43 at 33.) However, the reasons that Leigh was unable to file a supplemental declaration are immaterial, as appellants in both cases "established only that they have visited wild horses within a large area containing the project, but not the project area itself." (AR 258.)

In short, the cases relied upon in the IBLA's order support the conclusion

that plaintiffs failed to show a legally cognizable interest that was substantially likely to be injured by the Juniper Project. Accordingly, the IBLA did not err in its consideration of those cases.

### IV.    CONCLUSION

The Court therefore DENIES Plaintiffs' motion for summary judgment (ECF No. 43) and GRANTS Defendants' cross-motions for summary judgment (ECF Nos. 60; 61).

The Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

DATED: March 30, 2026

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

16